1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                    **EASTERN DISTRICT OF CALIFORNIA**
10

11  LUIS BARAJAS, MARIA VARGAS, and          ) Case No.: 1:20-cv-0679 JLT SKO
    ELBA VIZCAINO on behalf of a class of    )
12  similarly situated individuals,          ) ORDER GRANTING DEFENDANTS' MOTION
                                             ) TO DISMISS
13                    Plaintiffs,            ) (Doc. 16)
                                             )
14          v.                               ) ORDER GRANTING LEAVE TO AMEND
                                             )
15  BLUE DIAMOND GROWERS INC.;               )
    DENISE HORN, individually; RESHAM        )
16  KLAIR, individually; and DOES 1 through 40, )
    inclusive,                               )
17                                           )
                      Defendants.            )
18  _____ )

19          Luis Barajas, Maria Vargas, and Elba Vizcaino assert they suffered violations of wage and hour

20  laws as employees of Blue Diamond Growers.  Plaintiffs seek to hold Blue Diamond Growers, Denise

21  Horn, and Resham Klair liable under federal and state law, stating claims on behalf of themselves and

22  other similarly situated, non-exempt employees.  (*See generally* Doc. 12.)

23          Defendants seek dismissal of all claims in the Plaintiffs' First Amended Complaint pursuant to

24  Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (*See* Doc. 16 at 2.)  Defendants also request

25  that the Court strike portions of the pleading, including Plaintiffs' request for disgorgement, pursuant

26  to Rule 12(f).  (*Id.* at 2-3.)  Plaintiffs oppose the motion, arguing they "met the pleading threshold."

27  (*See* Doc. 17 at 5.)  The Court finds the matter suitable for decision without oral arguments, and no

28  hearing date will be set pursuant to Local Rule 230(g) and General Order 618.  For the reasons set

                                          1

1  forth below, the motion to dismiss is **GRANTED**, and the First Amended Complaint is dismissed with

2  leave to amend.

3  **I.      Background and Procedural History**

4      Plaintiffs were non-exempt employees of Blue Diamond Growers, which owns and operates

5  almond processing plants in California.  (Doc. 12 at 4-5, ¶¶ 13-17.)  Luis Barajas was employed by

6  Blue Diamond Growers from March 2005 until August 15, 2018.  (*Id.* at 8, ¶ 28.)  Maria Vargas

7  worked for Blue Diamond Growers from January 1, 2008 to March 25, 2018.  (*Id.*)  Elba Vizcaino was

8  employed from August 1997 to March 12, 2018.  (*Id.*)  Plaintiffs assert that during their employment,

9  Denise Horn and Resham Klair were agents of Blue Diamond Growers.  (*Id.* at 15, ¶ 53.)

10     Plaintiffs assert Blue Diamond Growers failed to provide compensation "for all hours worked."

11  (Doc. 12 at 8, ¶ 26) [internal quotations omitted].)  According to Plaintiffs, Blue Diamond Growers

12  "routinely requires and/or suffered or permitted Plaintiffs and similarly situated employees to work

13  more than 40 hours per week."  (*Id.* at 13, ¶ 42.)  Plaintiffs contend Blue Diamond Growers "failed and

14  refused to pay all overtime premiums to Plaintiffs and similarly situated employees for their hours

15  worked in excess of forty hours per week."  (*Id.*, ¶ 43; *see also id.* at 16-17, ¶¶ 61-67.)

16     Plaintiffs contend also that Blue Diamond Growers, Horn, and Klair are liable for failure to pay

17  minimum wage to employees.  (Doc. 12 at 14-16, ¶¶ 51-60.) Plaintiffs allege they and other employees

18  of Blue Diamond Growers "were routinely required to work prior to their scheduled shifts … and after

19  their scheduled shifts, without compensation." (*Id.* at 15, ¶ 53.)  Plaintiffs allege they were instructed

20  by Blue Diamond Growers, Horn, and Klair "to prepare for their shifts by putting on their

21  work/protective equipment prior to clocking in."  (*Id.*)  Plaintiffs also assert the employees "were

22  required to doff their work/protective equipment after clocking out at the end of their shift."  (*Id.*)

23     Plaintiffs allege Blue Diamond Growers "failed to provide timely and uninterrupted" rest and

24  meal periods, "or pay premium wages in lieu thereof."  (Doc. 12 at 9, ¶ 31; *see also id.* at 18-21, ¶¶ 71-

25  87.)  Instead, Plaintiffs contend "they were routinely required to work during their meal periods,"

26  though "[they] and the Class did not voluntarily or willfully waive" their meal and rest periods.  (*Id.* at

27  19-20, 22, ¶¶ 76, 82, 87.)  According to Plaintiffs, they were "required to wear radios in the 'on'

28  position during their meal periods and were required to respond to their radios for work related matters

without compensation." (*Id.* at 15, ¶ 53.) Similarly, Plaintiffs contend they "were not relieved of all duties during their rest periods and were required to respond to calls on the radio during their rest period." (*Id.* at 19, ¶ 77.)

Finally, Plaintiffs assert they "were not paid all earned wages at the time of end of the employment relationship with [Blue Diamond Growers]." (Doc. 12 at 22, ¶ 93.) Plaintiffs allege, "On information and belief, [other similarly situated employees] were not paid all wages earned at the time of termination or resignation." (*Id.*) "Plaintiffs allege that Defendants' custom, practice, and/or policy was not to pay for previously earned minimum, overtime, or unrecorded time spent under Defendant's control, at the time that final wages were paid." (*Id.*)

According to Plaintiffs, Defendants "maintained and enforced unlawful labor policies against employees that revolve around Defendants' compensation policies and their record-keeping procedures." (Doc. 12 at 7-8, ¶ 25.) Thus, Plaintiffs seek to bring claims on their own behalf "and others similarly situated," with "a Rule 23 opt-out California class and as an opt-in FLSA Collective Action pursuant to 29 U.S.C. §216 (b)." (*Id.* at 9, ¶ 33.) Plaintiffs propose the classes be defined as:

> California Class: All persons who are employed or have been employed by Blue Diamond Growers in the State of California who, within four (4) years of the filing of the Complaint in this case, who have worked as non- exempt hourly employees and were not paid all lawful wages or not paid statutory penalties; and
>
> FLSA Collective: All persons who are employed or have been employed by Blue Diamond Growers in the State of California who, within three (3) years of the filing of the Complaint in this case, who have worked as non- exempt hourly employees and were not paid all lawful wages.

(*Id.* at 9, ¶ 33.)

Plaintiffs initiated this action by filing a complaint on May 13, 2020, which Plaintiffs amended on June 8, 2020. (Docs. 1, 12.) Plaintiffs identify the following causes of action: (1) failure to pay overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*; (2) failure to pay minimum wage in violation of Cal. Lab. Code §§ 1197, 1194(a), and 1194.2; (3) failure to pay overtime wages in violation of Cal. Lab. Code §§ 510, 1194, 1194.2 and IWC Wage Order 8; (4) failure to provide rest periods or premium wages in violation of Cal. Lab. Code §§ 226.7, 558, and IWC Wage Order 8; (5) failure to provide meal periods or premium wages in violation of Cal. Lab. Code §§ 226.7, 512, 558, and IWC Wage Order 8; (6) failure to pay all wages at termination or resignation in violation

of Cal. Lab. Code § 558.1; and (7) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.  (*See generally* Doc. 12.)  Plaintiffs seek disgorgement of all wages; declaratory relief; compensatory damages; "restitution … due to their unfair competition," and "premium pay wages, and penalties."  (*Id.* at 25-26.)

Defendants filed the motion to dismiss and strike portions of the First Amended Complaint on August 21, 2020.  (Doc. 16.)  Plaintiffs filed their opposition to the motion on September 9, 2020 (Doc. 17), to which Defendants file a brief in reply on September 15, 2020 (Doc. 18).[1]

## II.     Motions to Dismiss

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In ruling on a motion to dismiss filed pursuant to Rule 12(b), the Court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).

When considering a motion to dismiss, the Court must accept the factual allegations made in the complaint as true.  *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976).  A court

---

[1] As the parties were informed on May 20, 2020, the Eastern District of California has been in a state of judicial emergency. (*See* Doc. 2-2.)  This action was recently assigned to the undersigned. (Doc. 20.)

must construe the pleading in the light most favorable to the plaintiffs and resolve all doubts in favor of the plaintiffs. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, legal conclusions need not be taken as true when "cast in the form of factual allegations." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

"The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent pleadings can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## III.     Requests to Strike

Pursuant to Rule 12(f), a district court "may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A "redundant" matter is comprised "of allegations that constitute a needless repetition of other averments or which are foreign to the issue to be denied." *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005). An immaterial matter "has no essential or important relationship to the claim for relief or the defenses being pleaded," while an "[i]mpertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds* (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706-07, 711 (1990)).

The purpose of a Rule 12(f) motion "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Generally, motions to strike "are disfavored and infrequently granted." *Neveau v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005). In reviewing a motion to strike, the court must view the pleadings under attack in the light most favorable to the pleader. *Lazar v. Trans Union LLC*, 195 F.R.D. 665, 669 (C.D. Cal. 2000). "If there is any

1  doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny

2  the motion."  *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F.Supp.2d 1048, 1057 (N.D. Cal. 2004).

3  **IV.    Discussion and Analysis**

4      Defendants seek dismissal of all causes of action, asserting the facts alleged are insufficient to

5  support Plaintiffs' claims for relief.  (*See* Doc. 16-1 at 13-22.) Defendants request the Court strike or

6  dismiss Plaintiffs' request for disgorgement and request for injunctive relief.  (*Id.* at 23-26.)  Plaintiffs

7  argue the Court should deny the request, asserting they "sufficiently allege facts that establish directly,

8  or by reasonable inference, each of their claims under the liberal notice pleading standard announced in

9  Rule 8."  (*See* Doc. 17 at 5.)

10     **A.    Liability of Individual Defendants**

11     As an initial matter, Defendants contend all claims raised against the individual defendants—

12  Denise Horn and Reham Klair—should be dismissed.  (Doc. 16-1 at 27-30.)  In the First Amended

13  Complaint, Plaintiffs indicate "[t]he core violations" alleged against Horn and Klair include: "causing

14  the: [1] failure to pay all minimum wages owed; [2] failure to pay all overtime wages owed; (3) failure

15  to provide rest periods or pay additional wages; (4) failure to provide rest periods or pay additional

16  wages; (5) failure to pay all wages earned at termination or resignation; and (6) failure to pay all

17  wages earned at termination or resignation."[2]  (Doc. 12 at 2-3, ¶ 5.)  Plaintiffs seek to hold Horn and

18  Klair liable for each of these alleged violations under Labor Code § 558.1.  (*See id.* at 14-23, ¶¶ 54, 67,

19  78, 88, 96.)

20          1.    Status as "managing agents"

21     Under California law, an "employer or other person acting on behalf of any employer, who

22  violates, or causes to be violated, any provision regulating minimum wages or hours and days of work

23  in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203,

24  226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation."  Cal. Lab.

25  Code § 558.1(a).  The law limits the phrase "other person acting on behalf of an employer" to

26  describing a natural person who is an owner, director, officer, or managing agent of the employer."

27

28
_____

[2] For clarity, the Court corrected the errors in numbering that appeared in the First Amended Complaint.  (*See* Doc. 12 at 3.)

Cal. Lab. Code § 558.1(b).  Thus, only an employer, owner, director, officer, or managing agent may be held liable for violations of the wage orders or the identified provisions of the California Labor Code.  *See id.*  It appears undisputed that Horn and Klair are not the owners, directors, or officers of Blue Diamond Growers.  However, the parties disagree whether the allegations are sufficient to show Horn and Klair are "managing agents," such that individual liability may be invoked under Section 558.1.  (*See* Doc. 16-1 at 27-30; Doc. 17 at 18-19.)

The term "managing agent," includes "only those corporate employees who exercise substantial independent authority and judgment in their corporate decisionmaking so that their decisions ultimately determine corporate policy."  *White v. Ultramar, Inc*., 21 Cal.4th 563, 566-67 (1999).[3]  These are corporate policies that "affect a substantial portion of the company and that are the type likely to come to the attention of corporate leadership."  *Roby v. McKesson Corp*., 47 Cal.4th 686, 714 (2009).  Accordingly, a "managing agent" is "more than a mere supervisory employee."  *Id*. at 573.  The California Supreme Court explained:

> [S]upervisors who have broad discretionary powers and exercise substantial discretionary authority in the corporation can be managing agents.  Conversely, supervisors who have no discretionary authority over decisions that ultimately determine corporate policy would not be considered managing agents even though they may have the ability to hire or fire other employees.

*White*, 21 Cal.4th at 577.  The "critical inquiry is the degree of discretion the employees possess in making decisions."  *King v. U.S. Bank Nattional Assoc.*, 53 Cal.App.5th 675, 713 (2020) (citation omitted).  Notably, the scope of an "employee's discretion and authority is … a question of fact for decision on a case-by-case basis."  *White*, 21 Cal.4th at 567; *see also Taylor v. Trees, Inc.,* 58 F.Supp.3d 1092, 1106 (E.D. Cal. 2014) ("[w]hether employees exercise sufficient authority is determined on a case-by-case basis").

In *White*, the plaintiff worked at a store owned by Ultramar, which owned several stores and employed "zone managers" for regions.  *See id.*, 21 Cal.4th at 566, 577.  White asserted the zone manager over his store, Lorraine Salla, was a "managing agent" of Ultramar.  *See id.* at 566-68.  The

---

[3] *White* addressed the term "managing agent" within the meaning of Cal. Civil Code § 3294(b).  *See White*, 21 Cal. 4th at 566.  However, Section 558.1 indicates "the term 'managing agent' has the same meaning as in subdivision (b) of Section 3294 of the Civil Code."  Cal. Lab. Code § 558.1.  Thus, *White* and its progeny are instructive on the meaning of the term.

court observed:

> As the zone manager for Ultramar, Salla was responsible for managing eight stores, including two stores in the San Diego area, and at least sixty-five employees. The individual store managers reported to her, and Salla reported to department heads in the corporation's retail management department.
>
> The supervision of eight retail stores and sixty-five employees is a significant aspect of Ultramar's business. The testimony of Salla's superiors establishes that they delegated most, if not all, of the responsibility for running these stores to her. The fact that Salla spoke with other employees and consulted the human resources department before firing plaintiff does not detract from her admitted ability to act independently of those sources.

*Id.* at 577.  The court found that while "Salla's supervision of plaintiff and her ability to fire him alone were insufficient to make her a managing agent," the evidence also showed "Salla exercised substantial discretionary authority over vital aspects of Ultramar's business that included managing numerous stores on a daily basis and making significant decisions affecting both store and company policy."  *Id.* Accordingly, the Court concluded Salla was a "managing agent" of Ultramar.  *Id.* at 578.

Following *White*, courts decline to find employees are managing agents when the facts do not show the employee was vested with discretionary authority over the business.  *See, e.g., Taylor v. Trees, Inc.,* 58 F.Supp.3d 1092, 1106-07 (E.D. Cal. 2014) (evaluating the facts upon a motion for summary judgment); *Gonzalez v. Sheraton Operating Corp.*, 2020 WL 7042817, at *1-2 (C.D. Cal. Dec. 1, 2020) (finding conclusory allegations that the plaintiff's supervisor was a "an owner director, officer, or managing agent" to be insufficient to invoke liability under Section 558.1); *Nguyen v. Erricson, Inc.*, 2018 WL 2836076, at *2-3 (N.D. Cal. June 11, 2018) (reviewing the allegations on a motion to remand to determine whether the plaintiff could state a claim against his supervisor as a "managing agent").

In *Taylor*, this Court found the plaintiff failed to establish his supervisor was a "managing agent" under California law.  Taylor sought to hold his former employer, Trees Inc., liable for discrimination, and Trees argued "a managing agent was not involved in any of the allegedly improper conduct."  *Id.*, 58 F.Supp.3d at 1096, 1103.  Taylor argued his general foreman, Ronnie Colis, was a managing agent, because Colis oversaw crews and foremen and had "complete discretion in running these crews, including determining an employee's ability to return to work after injury."  *Id.* at 1104. The Court observed the evidence showed "Colis was the General Foreman for one of the two Trees

1  yards in Fresno," while Trees operated in 21 states and "in other California cities, including Yuba City,

2  Modesto, Tulare, Sacramento, Turlock, Stockton, Jamestown, Paso Robles, Sonora, and Watsonville."

3  *Id.* The Court found there was "insufficient evidence that the Fresno yard managed by Colis was a

4  substantial portion of [the] business." *Id.* Although "Colis had the ability to hire and fire, discipline,

5  and train employees," there was "no evidence that describe[d] the nature or extent of Colis's authority."

6  *Id.* at 1107. The Court determined "the evidence does not indicate that Colis had substantial

7  discretionary authority over significant aspects of Trees's business, or that Colis's decisions created

8  corporate policy." Thus, the Court concluded Colis was not a "managing agent" as defined by

9  California law. *Id.*

10     The Northern District addressed similar facts in *Nguyen*, in which the plaintiff asserted his

11  supervisor, Michael Wilcox, was a "managing supervisor" and sought to hold Wilcox liable for

12  violations of wage and hour laws under Section 558.1. *Id.*, 2018 WL 2836076, at *2-3. Nguyen

13  argued, "Wilcox oversaw the location where Plaintiff worked and supervised the daily work of

14  employees." *Id.* at *3. Specifically, Nguyen alleged that "he reported to Wilcox, Wilcox gave

15  Plaintiff his daily assignments, and Wilcox reviewed all hours submitted for compensation and all

16  requests for reimbursement." *Id.* (internal quotation marks omitted). The court found the allegations

17  were insufficient "to show that Wilcox had substantial discretionary authority over a significant aspect

18  of [the] business or that Wilcox had 'broad and unlimited authority.'" *Id.* Further, the court observed

19  there were no "allegations from which to infer that Wilcox's decisions created corporate policy." *Id.*

20  Accordingly, the court concluded "the allegations in the complaint fail to establish that Wilcox was a

21  'managing agent of the employer'" as required by California Labor Code section 558.1(b)." *Id.* at *2

22  (emphasis omitted).

23     The matter now before the Court suffers deficiencies similar to those identified in *Taylor* and

24  *Nguyen*. In the First Amended Complaint, Plaintiffs allege Horn and Klair are agents of Blue Diamond

25  Growers. (Doc. 12 at 7, ¶ 23; *id.* at 15, ¶ 53.) Plaintiffs argue: "The Individual Defendants are

26  'managing agents' within the meaning of Labor Code §558.1 as they exercise a great deal of discretion

27  in the workplace." (Doc. 17 at 19.) However, having "a great deal of discretion" is not the standard

28  applied under California law. Rather, as discussed above, Plaintiffs must allege facts sufficient to show

1  Horn and Klair "exercise substantial independent authority," such that "their decisions ultimately

2  determine corporate policy."  *See White*, 21 Cal.4th at 566-567; *Taylor*, 58 F.Supp.3d at 1106-1107;

3  *Nguyen*, 2018 WL 2836076, at *2-3.  Plaintiffs allege Horn and Klair conduct business in Stanislaus

4  County and maintain a business address at 4800 Sisk Road, Salida, California.  (Doc. 12 at 6, ¶¶ 18-19.)

5  However, is unclear whether this address is that of the Blue Diamond Growers almond processing plant

6  in Salida.  (*See id.* at 5, ¶ 17.)  Plaintiffs acknowledge Blue Diamond Growers also owns and operates

7  facilities in other cities in California, including Sacramento and Turlock.  (*Id.*)  Plaintiffs, who worked

8  at facilities in Stanislaus County, assert Blue Diamond Grower, Horn, and Klair "instructed

9  [employees] … to prepare or their shifts by putting on their work/protective equipment prior to

10  clocking in."  (*Id.* at 4-5, 15, ¶¶ 13-15, 54.)  Plaintiffs also allege:

11
12
13
> Plaintiffs and the Class were also required to wear radios in the "on" position
> during their meal periods and were required to respond to their radios for work
> related matters without compensation. Finally, Plaintiffs and Class members were
> required to doff their work/protective equipment after clocking out at the end of
> their shift.

14  (*Id.*)  It is unclear whether the instructions regarding radios came from Horn and Klair.  (*See id.*)

15  However, Plaintiffs assert Horn and Klair "are liable for causing [the wage and hour] violations under

16  Labor Code § 558.1."  (*Id.* at ¶¶ 54, 67, 78, 88, 96.)

17          Importantly, the facts alleged are insufficient for the Court to find Horn and Klair possessed

18  the required "discretionary authority" over the business.  Even assuming Horn and Klair instructed

19  Plaintiffs and putative class members to prepare for shifts prior to checking in, keep radios on during

20  rest and meal periods, and take doff equipment after clocking out, this at most shows limited

21  supervising authority over employees' daily assignments.  *See Nguyen*, 2018 WL 2836076, at *3.

22  There are no allegations addressing "the nature or extent of" the authority vested in Horn and Klair.

23  *See Taylor*, 58 F.Supp.3d at 1107.  For example, there are no allegations addressing whether Horn and

24  Klair had similar authority over employees at plants owned by Blue Diamond Growers outside of

25  Stanislaus County, such that the Court could conclude the individual defendants had "substantial

26  discretionary authority over significant aspects" of the business.  *See id.*; *see also White*, 21 Cal.4th at

27  566-67.  Ultimately, there are no allegations to support the conclusion that Horn and Klair had

28  authority to make decisions creating or affecting corporate policies of Blue Diamond Growers.

Consequently, Plaintiffs fail to allege facts sufficient to support a conclusion that Horn and Klair were "managing agents" of Blue Diamond Growers, as necessary to invoke their liability under Section 558.1.

> 2.      Liability for failure to pay wages earned at termination

In this sixth claim for relief, Plaintiffs seek to hold Horn and Klair liable for the failure to pay all earned wages at termination or resignation, in violation of Cal. Lab. Code §§ 201 and 202.  (*See* Doc. 12 at 22, ¶ 92.)  Plaintiffs allege the defendants "are liable for causing this violation under Labor Code § 558.1."  (*Id.* at 23, ¶ 95.)  Defendants assert the cause of action fails because Section 558.1 "by its express terms does not allow for individuals to be sued for failure to pay final wages upon discharge."  (Doc. 16-1 at 30, citing *Rios v. Linn Star Transfer, Inc*., 2020 WL 1677338, at *6 (N.D. Cal. Apr. 6, 2020).)  Plaintiffs do not respond to this argument.  (*See* Doc. 17 at 12-13, 18-19.)

Section 558.1 indicates liability may be imposed upon any employer—or other persons, such as managing agents—who violates "any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802…."  Cal. Lab. Code § 558.1.  Thus, Section 558.1 identifies specific provisions of the Labor Code to which it applies and does not include violations under Sections 201 and 202, related to payment of wages earned and unpaid at the time of discharge or resignation.  *Id.* Reviewing this statutory language, Section 558.1 does not create individual liability for violations of Sections 201 and 202.  *See Rios*, 2020 WL 1677338, at *4 (noting Section 558.1 does not apply to Labor Code violations under Sections 201 and 202, and finding the claim failed as a matter of law because "Section 201 does not impose liability on individuals"); *Usher v. White*, 64 Cal.App.5th 883, 886 (May 28, 2021) (noting liability is imposed for "any violation of the *enumerated sections* of the Labor Code… set forth in section 558.1" [emphasis added]); *Cordell v. PICC Lines Plus LLC*, 2016 WL 4702654, at *8 (N.D. Cal. Sept. 8, 2016) (dismissing with prejudice a claim arising under Section 201 claim against the individual defendant because it imposes liability on employers and no "persons acting on behalf of their employer").

Because Section 558.1 does not include Sections 201 and 202 in the enumerated Labor Code provisions for individual liability may be imposed, Plaintiffs' claim against Horn and Klair fails as a

1  matter of law.  *See Rios*, 2020 WL 1677338, at *4; *Cordell*, 2016 WL 4702654, at *8.

2  3.    Conclusion as to individual defendants

3      The factual allegations are insufficient to support a conclusion that Horn and Klair are

4  "managing agents" of Blue Diamond Growers, such that individual liability may be imposed under

5  Section 551.8 for the alleged violations of California wage and hour law.  Accordingly, dismissal of all

6  claims raised against Horn and Klair is appropriate.  Furthermore, because Horn and Klair may not be

7  held liable as a matter of law for the violations of Sections 201 and 202, the Sixth Claim for Relief as

8  raised against the individual defendants is dismissed without leave to amend.

9      **B.**    **First Claim for Relief:  Violation of the FLSA**

10      Plaintiffs seek to hold Blue Diamond Growers liable for violating the Fair Labor Standards Act,

11  which regulates the minimum wages paid to employees, including wages for "overtime" work.  *See* 29

12  U.S.C. §§ 206-207; *Dent v. Cox Communs. Las Vegas, Inc.*, 502 F.3d 1141, 1143 (9th Cir. 2007).

13  Under the FLSA, an employee who works more than forty hours a week must be paid at least one and

14  one-half times his or her regular rate for the additional hours.  29 U.S.C. § 207(a)(1).  An employer

15  who violates Section 207 "shall be liable to the employee or employees affected in the amount of their

16  ... unpaid overtime compensation ... and in an additional equal amount as liquidated damages."  29

17  U.S.C. § 216(b).

18      Plaintiffs allege Blue Diamond Growers "routinely requires and/or suffered or permitted

19  Plaintiffs and similarly situated employees to work more than 40 hours per week, and routinely without

20  paying them all overtime premium wages for hours worked in excess of 40 hours per week."  (Doc. 12

21  at 13, ¶ 42.)  Plaintiffs contend Blue Diamond Growers "pursuant to its policies and practices, failed

22  and refused to pay all overtime premiums to Plaintiffs and similarly situated employees for their hours

23  worked in excess of forty hours per week."  (*Id.*, ¶ 43.)  Plaintiffs assert: "By failing to compensate

24  Plaintiffs and similarly situated employees at a rate not less than one and one-half times the regular rate

25  of pay for work performed in excess of forty hours in a workweek, [Blue Diamond Growers] violated,

26  and continued to violate, the FLSA."  (*Id.*, ¶ 44.)  Further, Plaintiffs contend Blue Diamond Growers,

27  "intentionally, with reckless disregard for their responsibilities under the FLSA, and without good

28  cause, failed to pay Plaintiffs and similarly situated employees their proper wages," and thus acted

12

willfully in violating the FLSA.  (*Id.* at 14, ¶ 46.)

Defendants assert Plaintiffs fail to allege facts sufficient to support a claim under the FLSA, because Plaintiffs allege "only boilerplate and conclusory allegations related to their overtime claims." (Doc. 16-1 at 17.)  Defendants contend the "FAC is devoid of any allegations regarding a single workday in which Plaintiffs or any putative class member claims to have worked in excess eight hours, or a single workweek in which Plaintiffs or any putative class member worked in excess of forty hours, and were not paid overtime wages."  (*Id.* at 18.)  Thus, Defendants assert the allegations are insufficient "to survive a motion to dismiss."  (*Id.*, citing *Byrd v. v. Masonite Corp.*, 2016 WL 756523, at *3 (C.D. Cal. Feb. 25, 2016); *Ovieda v. Sodexo Operations, LLC*, 2012 WL 1627237, at *2-*3 (C.D. Cal. May 7, 2012).)

Plaintiffs argue their allegations are sufficient because they "are not required to plead every instance (i.e. date, paycheck number, amount owed) in which Defendant failed to pay the Plaintiffs the overtime wages they earned."  (Doc. 17 at 11, citing *Acho v. Cort*. 2009 WL 3562472, *3 (N.D. Cal. Oct. 27, 2009).)  For example, Plaintiffs observe that in *Acho*, the court denied a motion to dismiss "because plaintiff alleged (1) the defendant was plaintiff's employer; (2) that plaintiff worked more than forty hours in a week; and (3) plaintiff did not receive compensation for his employment in excess of the forty hours per week."  (*Id.*, citing *Acho*, 2009 WL 3562472, at *3.)  Instead, Plaintiffs contend that to "allege an overtime claim, Plaintiffs are simply required to plead that the Defendant was their employer, they worked more than forty hours per week or more than eight hours in a day and did not receive overtime compensation."  (*Id.*, citing *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, 2011 WL 4082543 (N.D. Cal. Sept. 13, 2011).)

Significantly, the cases cited by Plaintiff were decided prior to *Landers v. Quality Commns., Inc.*, in which the Ninth Circuit addressed for the first time "the degree of specificity required to state a claim for failure to pay minimum wages or overtime wages under the FLSA" following the Supreme Court's decisions in *Twombly* and *Iqbal*.  *Id.*, 771 F.3d 638, 640 (9th Cir. 2015).  The Court noted: "Pre-*Twombly* and *Iqbal*, a complaint under the FLSA for minimum wages or overtime wages merely had to allege that the employer failed to pay the employee minimum wages or overtime wages." *Id.*, 771 F.3d at 641.  However, the Ninth Circuit observed that with *Twombly* and *Iqbal*, the Supreme

13

1    Court clarified plaintiffs must allege facts sufficient to "state[] a plausible claim for relief." *Landers*,

2    771 F.3d at 641.  Therefore, the Ninth Circuit determined in *Landers* that "to survive a motion to

3    dismiss, a plaintiff asserting a claim to overtime payments must allege that she worked more than forty

4    hours in a given workweek without being compensated for the overtime hours worked during that

5    workweek." *Id.* at 644-45, citing *Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012), *Lundy v.*

6    *Catholic Health System of Long Island Inc*., 711 F.3d 106, 114 (2d Cir. 2013); *Davis v. Abington*

7    *Memorial Hospital*, 765 F.3d 236, 242-43 (3d Cir. 2014).  The Court explained:

8          [T]he plausibility of a claim is "context-specific." *Lundy*, 711 F.3d at 114.  A
           plaintiff may establish a plausible claim by estimating the length of her average
9          workweek during the applicable period and the average rate at which she was paid,
           the amount of overtime wages she believes she is owed, or any other facts that will
10         permit the court to find plausibility. *See Pruell*, 678 F.3d at 14.  Obviously, with the
           pleading of more specific facts, the closer the complaint moves toward plausibility.
11         However, like the other circuit courts that have ruled before us, we decline to make
           the approximation of overtime hours the *sine qua non* of plausibility for claims
12         brought under the FLSA.

13   *Landers*, 771 F.3d at 645.  Accordingly, generalized allegations of FLSA violations will not suffice.

14   *Id.* at 645-66.

15         Having determined the applicable standards following *Twombly* and *Iqbal*, the Ninth Circuit

16   evaluated whether Landers alleged facts sufficient to support his claims under the FLSA.  Landers

17   alleged his employer "implemented a '*de facto* piecework no overtime' system and/or failed to pay …

18   overtime wages for the hours worked by Landers," which resulted in "the plaintiffs not being paid time

19   and one-half their 'regular hourly rate' for work in excess of 40 hours a week." *Landers*, 771 F.3d at

20   645-646.  Further, Landers asserted he "worked more than 40 hours per week for the defendants, and

21   the defendants willfully failed to make said overtime and/or minimum wage payments." *Id.* at 646.

22   The Ninth Circuit determined these allegations were insufficient, observing: "Notably absent from the

23   allegations in Landers's complaint … was any detail regarding a given workweek when Landers

24   worked in excess of forty hours and was not paid overtime for that given workweek and/or was not paid

25   minimum wages." *Id.*  The Court explained that although FLSA plaintiffs "cannot be expected to

26   allege 'with mathematical precision,' the amount of overtime compensation owed by the employer,

27   they should be able to allege facts demonstrating there was at least one workweek in which they

28   worked in excess of forty hours and were not paid overtime wages." *Id.* (citation omitted).  Therefore,

14

the Court concluded Landers failed to allege facts sufficient to support a claim for violation of the FLSA. *Id.*

Following *Landers*, courts repeatedly found allegations such as those identified by Plaintiffs in *Acho*—which offered only allegations corresponding to the elements for an FLSA claim—could not withstand a motion to dismiss. *See, e.g., Tan v. GrubHub, Inc.,* 171 F. Supp. 3d 998, 1007-08 (N.D Cal. 2016) ("*Landers* clarifies that mere conclusory allegations that class members 'regularly' or 'regularly and consistently' worked more than 40 hours per week—without any further detail—fall short of *Twombly/Iqbal*"); *Shann v. Durham Sch. Servs., L.P.*, 182 F.Supp.3d 1044, 1047 (C.D. Cal. 2016) (noting the plaintiffs failed to "allege a single workweek where they worked in excess of forty hours and were not paid for the excess of hours in that workweek," and this deficiency "plainly subjects [the] claim to dismissal"); *Perez v. DNC Parks & Resorts at Sequoia*, 2020 WL 4344911 at * 8 (E.D. Cal. July 29, 2020) (finding similar allegations insufficient to support claims under the FLSA).

For example, in *Perez*, the plaintiffs alleged they suffered minimum wage and overtime wage violations under the FLSA because they:

> (1) were interrupted during their breaks, (2) were paid for less than the overtime hours actually worked, (3) were not provided with premium payments for all meal and rest periods that defendants forced them to miss, (4) had their time records improperly adjusted to reflect meal breaks that were not actually taken, (5) were required to finish their allotted work even after clocking out for the day, and (6) did not have the value of certain fringe benefits factored into the calculation of their rate of pay for overtime hours.

*Perez*, 2020 WL 4344911 at * 8.  The Court observed the *Perez* plaintiffs did not "identify a single workweek where they were not paid the … overtime pay for any hours worked in excess of eight hours in one workday and forty hours in any one workweek." *Id.*  The Court noted that though one plaintiff alleged she "often works 48 hours per week over 6 days, but ... is only paid for 43 to 45 hours for those weeks," she did not allege "what constitutes 'often' and whether it even represents the 'average workweek during the applicable period.'" *Id.*, quoting *Landers*, 771 F.3d at 645. Furthermore, the Court noted the plaintiffs did not identify the average rates at which they were paid or estimate the amount of overtime wages owed. *Id.*  Accordingly, the Court found dismissal of the overtime claim was appropriate. *Id.*

Plaintiffs' First Amended Complaint suffers pleading deficiencies like those identified in

*Landers, Tan*, and *Perez*.  Plaintiffs merely allege Blue Diamond Growers "routinely" required "Plaintiffs and similarly situated employees to work more than 40 hours per week, and routinely without paying them all overtime premium wages for hours worked in excess of 40 hours per week." (Doc. 12 at 13, ¶ 42.)  However, *Landers* established a plaintiff's allegation that overtime occurred "routinely" is not sufficient to establish the plausibility of a claim.  *See Tan,* 171 F. Supp. 3d at 1007-1008.  Plaintiffs do not identify any specific weeks they were required to work overtime, estimate the amount of overtime worked or the amount of overtime wages owed, or make any allegations beyond those which mirror the elements of a claim for a violation of the FLSA.[4]  Given the lack of factual allegations, the Court is unable to find Plaintiffs stated a cognizable claim for overtime wages under the FLSA.  *See Landers*, 771 F.3d at 645; *Tan,* 171 F. Supp. 3d at 1007-08; *Perez*, 2020 WL 4344911 at *8.  Therefore, the motion to dismiss the claim for a violation of the FLSA is granted.

### C.      Second Claim for Relief:  Minimum Wage

Plaintiffs seek to hold Blue Diamond Growers liable for failure to pay minimum wages and statutory wage penalties in violation of Cal. Lab. Code §§ 1197, 1194(a), & 1194.2.  (Doc. 12 at 14-16, ¶¶ 51-60.)  Under Section 1197, "[t]he minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful."  Cal. Lab. Code § 1197.  If an employer fails to pay its employees the minimum wage, Section 1194 provides that "any employee receiving less than the legal minimum wage … is entitled to

---

[4] To the extent Plaintiffs now contend their FLSA overtime claim is based, at least in part, upon the requirement for Plaintiffs and class members "to doff equipment at the end of their shift, after clocking out," this allegation was not incorporated in to the FLSA claim because it was alleged only later in the complaint.  (Doc. 17 at 12, citing Doc. 12 at 15, ¶ 53 [emphasis omitted].)  Moreover, it is not clear whether the activity identified is compensable, as courts apply a three-step inquiry to determine whether an activity should be compensated under the FLSA.  *See Alvarez v. IBP, Inc*., 339 F.3d 894, 902-03 (9th Cir. 2003); *see also Ceja-Corona v. CVS Pharmacy, Inc*., 2013 WL 796649, at *4 (E.D. Cal. Mar. 4, 2013).  The Court considers: "(1) whether the activity constituted 'work,' (2) whether the activity was an 'integral and indispensable' duty, and (3) whether the activity was *de minimis*." *Ceja-Corona*, 2013 WL 796649, at *4 (citing *Bamonte v. City of Mesa*, 598 F.3d 1217, 1224 (9th Cir. 2010)).  Importantly, courts determined donning and doffing protective gear may take a *de minimus* amount of time. *See, e.g.*, *Alvarez*, 339 F.3d at 903-904 ("time spent donning and doffing non-unique protective gear such as hardhats and safety goggles is not compensable" under the FLSA because "[t]he time it takes perform these tasks vis-a-vis non-unique protective gear is de minimis as a matter of law"), *aff'd on other grounds*, 546 U.S. 21 (2015); *Von Friewalde v. Boeing Aero. Operations, Inc*., 339 Fed. App'x. 448, 454 (5th Cir. 2009) ("donning and doffing generic safety gear (e.g., hearing and eye protection) involved a de minimis amount of time and therefore were non-compensable activities under the FLSA").  There are no facts alleged related to the protective equipment Plaintiffs and similarly situated employees needed to doff, or the amount of time expended, such that the Court may determine whether it was not *de minimis*.

recover in a civil action the unpaid balance of the full amount of this minimum wage."  Cal. Lab. Code § 1194.  If Plaintiffs and other class members were not paid minimum wages, then they are entitled to payment of the full amount of the unpaid minimum wage. *Id.*

Plaintiffs contend Blue Diamond Growers "failed to pay Plaintiffs and the Class the minimum wage for all hours worked." (Doc. 12 at 15, ¶ 53.)  They assert that "Plaintiffs and the Class were routinely required to work prior to their scheduled shifts, during their meal periods when they were authorized and permitted and after their scheduled shifts, without compensation."  (*Id.*)  Specifically, Plaintiffs allege:

> Plaintiffs and Class Members were instructed by the [Blue Diamond Growers] and their agents, including Defendants Denise Horn and Resham Klair, to prepare for their shifts by putting on their work/protective equipment prior to clocking in. This required Plaintiffs and the Class to arrive at their place of work prior to their scheduled shift to don work/protective equipment and prior to clocking in. Plaintiffs and the Class were also required to wear radios in the "on" position during their meal periods and were required to respond to their radios for work related matters without compensation. Finally, Plaintiffs and Class members were required to doff their work/protective equipment after clocking out at the end of their shift. This violation of California minimum wage law was substantial and occurred on a daily basis due to the [Blue Diamond Growers'] employment practices.

(*Id.*, emphasis omitted.)

Defendants argue these allegations are insufficient to state a claim and "fail[] to comply with the Rule 8 pleading standards." (Doc. 16-1 at 19.)  Defendants observe that Plaintiffs "do not plead a single occasion on which any of these 'example' violations took place as to them or any members of the putative class." (*Id.*)  Defendants also note Plaintiff did not "allege the sub-minimum hourly wage that Plaintiffs contend that they or the putative class members received." (*Id.*)  Defendants observe the Central District found such allegations were necessary and dismissed a claim for minimum wage violations where the plaintiff failed to "identify a specific instance in which he was denied a minimum wage." (*Id.*, citing *Byrd*, 2016 WL 756523, at *3.)

Plaintiffs maintain they "sufficiently plead facts to state a California minimum wage claim." (Doc. 17 at 10, emphasis omitted.) Plaintiffs note that under *Landers*, they are required to "plead facts demonstrating at least one workweek when she was not paid minimum wage to state a plausible claim," and assert "[t]his is a fairly easy standard to meet."  (*Id.*, citing *Landers*, 771 F.3d at 647.)  For example, Plaintiffs observe the Northern District determined a plaintiff stated a minimum wage claim

17

1    under Section 1997 where the plaintiff alleged "that he worked 26 hours at a specific rate."  (*Id.*, citing

2    *Albert v. Postmates Inc*., 2019 WL 1045785 (N.D. Cal. March 5, 2019).)  According to Plaintiffs, their

3    allegations are "specific" enough to "allow the Court to draw reasonable inferences that Defendants

4    are liable for violating minimum wage law."  (*Id.* at 10-11.)  Plaintiffs again argue they were "not

5    required to plead every instance (i.e. date, paycheck, number amount owed), in which Defendant failed

6    to pay all wages owed."  (*Id.*, citing *Acho*, 2009 WL 3562472, *3.)

7         Importantly, though *Landers* addressed FLSA claims, federal courts determined the pleading

8    standards identified extends to claims under the California Labor Code.  *See, e.g., Shann v. Durham*

9    *Sch. Servs., L.P*., 182 F.Supp.3d 1044 (S.D. Cal. 2016) ("[t]he pleading standards set forth in *Landers*

10    apply equally" to a plaintiff's claims for overtime and minimum wage violations under state law); *Tan*

11    *v. GrubHub, Inc*., 171 F.Supp.3d 998, 1006 (N.D. Cal. 2016); *Tan v. GrubHub, Inc*., 171 F.Supp.3d

12    998, 1006 (N.D. Cal. 2016) ("Although *Landers* discussed FLSA claims, its reasoning applies to

13    California Labor Code claims as well"); *Krauss v. Wal-Mart, Inc.*, 2019 WL 6170770 at *3 (E.D. Cal.

14    Nov. 19, 2019) (finding the plaintiff failed to allege facts sufficient to support a claim for minimum

15    wage violations under California law with "generalized allegations" and she did not allege facts

16    sufficient to conclude she was paid less than minimum wage during any given week). Thus, Plaintiffs'

17    reliance upon *Acho* was misplaced, "as *Acho* predates *Landers*, and therefore does not apply the correct

18    legal standard."  *Guerrero v. Halliburton Energy Servs*. 2016 WL 6494296 (E.D. Cal. Nov. 2, 2016).

19    Instead, plaintiffs are required to do more than present conclusory statements that they, and class

20    members, were paid less than minimum wage in violation of California law.  This burden may be met

21    with allegations addressing as the hourly wages paid and the amount of off-the-clock work required.

22    *See, e.g., Hines v. Constellis Integrated Risk Mgt.*, 2021 WL 4432833 (C.D. Cal. Aug. 24, 2021);

23    *Dawson v. One Call Med.*, 2021 WL 5513516 (S.D. Cal. Sept. 21, 2021).

24         In *Dawson*, the court found the allegations sufficient to conclude the plaintiff "was paid less

25    than the minimum wage while an employee," though the claim for minimum wage violations was

26    dismissed on other grounds.  *Id.*, 2021 WL 5513516 at *1, *4.  Dawson alleged he was paid "an hourly

27    wage of $10.00, but only after the first hour of waiting, which wasn't compensated."  *Id.*, 2021 WL

28    5513516 at *1.  The court observed that "$10.00 was the minimum wage in both Los Angeles and

California as a whole" during the applicable period. *Id.* at *4. Construing the allegations in the light most favorable to Dawson, the court explained that because Dawson alleged "he wasn't paid *any* wage for the first hour of work spent waiting," once that hour was added to the time that should be compensated, it brought "his average hourly wage below the $10.00 per hour he was paid for subsequent hours." *Id.* Thus, the court concluded Dawson "sufficiently alleges that his compensation was below the minimum wage." *Id.*

On the other hand, the court determined in *Hines* that the plaintiff failed to allege facts sufficient to support a conclusion that he was paid below minimum wage. *Id.*, 2021 WL 4432833. Hines alleged the defendants "did not pay him a minimum wage for all of the time that he worked because Defendants allegedly did not permit employees to clock-in for pre– and post-shift activities," including "donning and doffing [a] uniform." *Id.* at *4. Hines also alleged "on information and belief[,] that on February 11, 2019, Defendants failed to compensate him for at least the minimum wage." *Id.* However, the Court found Hines' assertion that "Defendants allegedly failed to pay him the minimum wage, … [was] not supported by any evidentiary facts." *Id.* Further, the court observed that while Hines alleged he was not permitted to record time for donning and doffing, Hines did not "allege any details about the purported detrimental rounding policy that would demonstrate that his hourly rate of $28.76 fell below the minimum wage" due to the unrecorded time. *Id.* Accordingly, the court dismissed granted the motion to dismiss Hines' claim for minimum wage violations. *Id.* at *5.

As in *Hines*, Plaintiffs allege they were required to perform uncompensated tasks that included donning and doffing unidentified "protective equipment" before and after work. (Doc. 12 at 15, ¶ 53.) In addition, Plaintiffs assert they were not provided proper meal periods because they needed to wear radios in the "on" position. (*Id.*) To the extent Plaintiffs allege compensation was required for the donning, doffing, and the meal periods, they have not estimated the amount of time spent on these tasks. (*See id.*) Plaintiffs also did not allege information regarding their hourly pay rates, such that the Court may determine the identified tasks would cause their hourly pay to fall below the mandated minimum wage. Thus, the allegations are not sufficient to support a conclusion that Plaintiffs—or class members—were paid less than the minimum wage in violation of California law. *See Dawson,* 2021 WL 5513516, at *4-5; *Boyack v. Regis Corp.,* 812 Fed. App'x 428, 430-31 (9th Cir. 2020) (affirming

1    dismissal where the plaintiff failed to include factual allegations supporting a conclusion that she

2    "received less than minimum wages for all hours worked").  Consequently, the motion to dismiss the

3    claim for minimum wage violations is granted.

4           **D.      Third Claim for Relief: Overtime Wages under California law**

5           Plaintiffs also seek to hold Blue Diamond Growers liable for failure to pay overtime wages in

6    violation of state law, as provided in Cal. Lab. Code § 510 and Industrial Welfare Commission Wage

7    Order 8.[5]  (Doc. 12 at 16-18.)  Section 510 governs what constitutes overtime hours, and what rate of

8    pay applies to various tiers of overtime work.  In relevant part, Section 510(a) provides:

> Eight hours of labor constitutes a day's work.  Any work in excess of eight hours
> in one workday and any work in excess of 40 hours in any one workweek and the
> first eight hours worked on the seventh day of work in any one workweek shall
> be compensated at the rate of no less than one and one–half times the regular rate
> of pay for an employee. Any work in excess of 12 hours in one day shall be
> compensated at the rate of no less than twice the regular rate of pay for an
> employee.

13   Cal. Lab. Code § 510(a).  Wage Order 8 "mirrors" the Labor Code provisions concerning overtime

14   hours.  *Cal. Dairies, Inc. v. RSUI Indem. Co.*, 617 F.Supp.3d 1023, 1041 (E.D. Cal. 2009); *see also* 8

15   C.C.R. § 11080.

16          Plaintiffs allege Blue Diamond Growers "violated California Labor Code § 510 and IWC

17   Wage Order 8 by failing to pay overtime to employees who were required to work more than 8 hours

18   in one workday or 40 hours in one work week."  (Doc. 12 at 17, ¶ 66.)  To support this conclusion,

19   Plaintiffs incorporated by reference all prior allegations.  (*Id.* at 16, ¶ 61; *see also* Doc. 17 at 12

20   [opposing dismissal and referring to allegations made in Paragraph 53 of the FAC].)  Thus, the claim

21   for overtime wages under California law rests upon the allegations that "Plaintiffs and Class members

22   were routinely required to work prior to their scheduled shifts … by putting on their work/protective

23   equipment prior to clocking in," and doffing the equipment "after clocking out at the end of their

24   shift."  (*See* Doc. 12 at 15, ¶ 53.)

25          According to Defendants, Plaintiffs offer only "statutory recitations [that] are not sufficient to

26

27   _____

[5] California's Industrial Welfare Commission Wage Order 8-2001, 8 C.C.R. § 11080 ("Wage Order 8"), "applies broadly
to industries handling products after harvest."  *Perez v. Leprino Foods Co.*, 2021 WL 53068, at *4 (E.D. Cal. Jan. 6, 2021).

28   Wage Order 8 is "to be accorded the same dignity as statutes" under California law.  *Brinker Restaurant Corp. v. Super.
Ct.*, 53 Cal. 4th 1004, 1027 (2012).

overcome a motion to dismiss." (Doc. 16-1 at 16.)  Defendants argue Plaintiffs' overtime under state law fails for the same reason as the overtime claim under the FLSA.  (*Id.*)  However, allegations concerning donning and doffing "work/protective equipment" off the clock were incorporated into the overtime claim arising under state law, in contrast to the claim under the FLSA.  (*See* Doc. 12 at 13-14, ¶¶ 39-46.)  Plaintiffs argue this sufficient to support the claim.  (Doc. 17 at 11-12.)

As discussed above, a plaintiff must do more than allege employees "'regularly' or 'regularly and consistently' worked more than 40 hours per week—without any further detail." *Tan*, 171 F.Supp.3d at 1007 (citing *Landers*, 771 F.3d at 646).  For example, this Court determined plaintiffs alleged facts sufficient to support a claim an overtime claim under California law where the allegations included "their hours and regular shifts." *Morrelli v. Corizon Health, Inc.*, 2019 WL 918210, at *6 (E.D. Cal. Feb. 25, 2019).  The *Morelli* plaintiffs alleged "their routine work shifts were 12 hours," and "they worked three 12-hour shifts every week without any overtime compensation for shifts exceeding 8 hours for the duration of their employment." *Id.*  The Court observed these details were "clearly missing" in *Landers*.  *Id.*

On the other hand, this Court found a claim for overtime wages was not plausible where the plaintiff alleged "[she] and others worked overtime," and off-the-clock work was "regularly required." *Tavares v. Cargill Inc.*, 2019 WL 2918061, at *3-4 (E.D. Cal. July 8, 2019).  Tavares alleged "[she] and other class members worked over eight hours in a day and/or forty hours in a week during their employment with defendants." *Id.*, at *1 (internal quotation marks omitted).  In addition, Tavares asserted they "were regularly required to perform unpaid work before clocking in and after clocking out for each shift due to time spent donning and doffing necessary uniforms and equipment." *Id.*  However, Tavares did not allege "the typical work schedule or the approximate number of hours worked during any given period." *Id.* at *4.  As a result, the Court found that, even considering the allegations of off-the-clock donning and doffing, the claim failed because Tavares did not allege facts supporting a conclusion that the donning and doffing time should have been compensated as *overtime*. *Id.*  Therefore, the Court dismissed Tavares' overtime claim under Section 510 with leave to amend. *Id.* at *4, *12.

Plaintiffs' claim for overtime under California law suffers the same deficiencies as those

1    identified in *Tavares*.  Although Plaintiffs' overtime under state law also adds minimal information

2    regarding donning and doffing, Plaintiffs did not allege any facts to support a conclusion that the time

3    donning and doffing resulted in employees being owed overtime wages.  The named Plaintiffs did not

4    allege any information concerning their scheduled shifts or allege "any detail regarding a given

5    workweek when [they] worked in excess of forty hours and [were] not paid overtime for that given

6    workweek."  *See Landers*, 771 F.3d at 646; *Tavares*, 2019 WL 2918061, at *4.  Because the facts

7    alleged are insufficient to state a plausible claim, the motion to dismiss the overtime claim arising

8    under California law is granted.

9           **E.      Fourth Claim for Relief: Rest Periods**

10          California law requires "employers to afford their nonexempt employees … rest periods during

11   the workday."  *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1018 (2012).  Pursuant to Cal.

12   Labor Code § 226.7(b), "No employer shall require any employee to work during any … rest period

13   mandated by an applicable order of the Industrial Welfare Commission...."  In relevant part, Wage

14   Order 8 provides:

15          Every employer shall authorize and permit all employees to take rest periods, which
            insofar as practicable shall be in the middle of each work period. The authorized
16          rest period time shall be based on the total hours worked daily at the rate of ten (10)
            minutes net rest time per four (4) hours or major fraction thereof. However, a rest
17          period need not be authorized for employees whose total daily work time is less
            than three and one-half (3 1/2) hours. Authorized rest period time shall be counted
18          as hours worked for which there shall be no deduction from wages.

19   8 Cal. Code Regs. § 11080(12)(A).  If an employer fails to comply with these provisions, "the

20   employer shall pay the employee one additional hour of pay at the employee's regular rate of

21   compensation for each work day that the meal or rest period is not provided."  Cal. Labor Code §

22   226.7(c).  Thus, if an "employers forces [an] the employee to miss a required rest break or does not

23   provide the employee with a required rest break, then the employee is entitled to be paid immediately

24   for the missed rest break."  *Gomez v. J. Jacobo Farm Labor Contr., Inc.*, 334 F.R.D. 234, 257 (E.D.

25   Cal. Nov. 5, 2019) (addressing an identical rest period provision in Wage Order 14).

26          Notably, "an employer may so burden the use of employees' break time that employees must be

27   considered 'on duty.'"  *Rodriguez v. Taco Bell Corp.*, 896 F.3d 952, 956 (9th Cir. 2018).  For example,

28   the California Supreme Court explained "on-call rest periods do not satisfy an employer's obligation to

relieve employees of all work-related duties and employer control." *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 270 (2016).  In *Augustus*, the court noted: "state law prohibits on-duty and on-call rest periods. During required rest periods, employers must relieve their employees of all duties and relinquish any control over how employees spend their break time." *Id.* at 260.  Thus, a policy requiring employees "to keep their radios and pagers on" and "respond when needs arise" during rest periods may not comply with the requirements of Cal. Lab. Code § 226.7 and the applicable wage orders. *Id.* at 271-272.

Plaintiffs allege Blue Diamond Growers "required that Plaintiffs and the Class wear radios in the 'on' position at all times, including during rest periods." (Doc. 12 at 19, ¶ 77.)  As a result, Plaintiffs contend "[they] and the Class were not relieved of all duties during their rest periods and were required to respond to calls on the radio during their rest period." (*Id.*)  Plaintiffs assert that "[i]n other instances, Plaintiffs and the Class simply were not afforded the opportunity to take rest periods." (*Id.*)  Plaintiffs assert they "did not voluntarily or willfully waive rest periods" (*Id.*, ¶ 76), and they "were never compensated with premium wages" for the interrupted or missed rest periods.  (*Id.*, ¶ 77.)

Defendants argue the "claims related to alleged rest period violations also fail to satisfy the minimum pleading requirements of Rule 8," because the allegations are insufficient to "reasonably infer that any violations have occurred." (Doc. 16-1 at 15-16.)  Defendants assert "the FAC alleges legal conclusions about rest break violations without alleging any specific instance regarding Plaintiffs' own allegedly noncompliant rest periods." (*Id.* at 16.)  Specifically, Defendants observe:

> Plaintiffs plead no specifics as to when or how often they (or the putative class members) were purportedly required to respond to calls during rest breaks, how many hours they were supposedly required to work without a rest break, how many rest breaks were denied, shortened, or interrupted, the reasons for same, or what policy, if any, governed any rest period violations. Plaintiffs also fail to allege specific facts demonstrating a class-wide policy or practice of not authorizing or permitting rest periods. *See Byrd*, 2016 WL 756523, at *3 (dismissing rest period claim because "Plaintiff [failed to] identify a specific instance in which he was denied a...rest break"); *Raphael*, 2015 WL 4127905, at *3 (dismissing rest period claim; finding that allegation that defendant failed to provide compliant rest breaks inadequate because it was "barren of facts describing specific periods of time where pay was denied or specific practices engaged in by [defendant] and instead only offer[ed] conclusory language"); *Ovieda*, 2012 WL 1627237, at *2 (dismissing rest period claim where "Plaintiff fail[ed] to allege that she even once worked a shift long enough to obligate Defendant to provide her with a rest period, let alone that she worked such shifts consistently").

(*Id.* at 16-17, modifications in original.)  Further, Defendants contend "it makes sense" that these allegations are missing because "most of the Plaintiffs (and the putative class members) did not even work in roles … where they would have regular access to radios, let alone be 'required' to have them on."  (*Id.* at 16, n. 7.)

Plaintiffs argue they "sufficiently state a claim for violations of California rest… break laws." (Doc. 17 at 9.)  According to Plaintiffs, the allegations that "Defendant Blue Diamond Growers required Plaintiffs and the Class to wear radios in the 'on' position at all times, including during rest periods," and "were required to respond to calls on their rest periods" are sufficient to support their claim that Defendants violated Wage Order 8.  (Doc. 17 at 9, citing FAC ¶¶ 75-77 [Doc. 12 at 19].)

Significantly, as Defendants assert, "[t]o successfully state a … rest break claim, plaintiffs must allege facts specifically identifying an instance where they were deprived" of the rest break."  *Perez*, 2020 WL 4344911, at * 8; *see also Boyack v. Regis Corp.*, 812 Fed. Appx. 428 (9th Cir. May 4, 2020) (holding a rest break claim fell short of the *Landers'* requirements by not "demonstrating at least one workweek in which [the plaintiffs] were personally deprived of rest breaks"); *Chavez v. RSCR Cal., Inc.*, 2019 WL 1367812, at *2.  Thus, even an allegation that an employer had a policy requiring individuals "to be on call" during rest breaks—without more—is insufficient.  *See, e.g., Sherman v. Schneider Nat'l Carriers, Inc.*, 2019 WL 3220585, at *3-4 (N.D. Cal. Mar. 6, 2019); *Wright v. Frontier Mgmt. LLC*, 2021 WL 2210739, at *2-3 (E.D. Cal. May 28, 2021).

For example, in *Sherman*, the plaintiff asserted his employer "had a policy of requiring its employees to be on call during meal and rest breaks."  *Id.*, 2019 WL 3220585, at *4.  Sherman asserted the defendant called employees, including him, "throughout the day, including during meal and rest periods … [and] required employees to respond as soon as possible."  *Id.*  The court observed Sherman did not allege he "did in fact stay on call during those times," or that defendant was aware when Sherman was on a break when calling.  *Id.*  The court concluded Sherman's allegations were insufficient "to establish a plausible claim," and dismissed the meal and rest break claims with leave to amend.  *Id.* at *4, *6.

Likewise, this Court determined in *Wright* that the plaintiffs failed to allege facts sufficient to support their claims for rest and meal break violations based upon an alleged policy requiring

employees to be "on call" during their breaks. *Id.*, 2021 WL 2210739, at *2-3. The *Wright* plaintiffs asserted the defendants had a "policy requiring employees to have communications devices on them at all time." *Id.* In addition, the plaintiffs asserted the defendants "require [them] to respond to calls [] regardless of whether they are taking a meal or rest break." *Id.* at *2 (modifications in original). The Court declined to infer from this alleged policy that the plaintiffs, personally, "were interrupted and asked to work during their off-duty meal and rest breaks." *Id.* Without additional allegations, the Court concluded the "meal and rest break allegations fall short of plausibility." *Id.*

Plaintiffs' allegations suffer deficiencies like those identified in *Sherman* and *Wright*. Though Plaintiffs allege Blue Diamond Growers required employees—including Plaintiffs—to "wear radios in the 'on' position at all times, including during rest periods," Plaintiffs do not allege their radios were, in fact, kept on at all times nor do they identify any instances when they responded to radio calls during their rest periods.[6] Plaintiffs also do not identify any specific occasions when they were not provided the required rest period. The facts as alleged are not sufficient to state a plausible claim that Plaintiffs or Class Members suffered rest break violations. *See Wright*, 2021 WL 2210739, at *2-3; *Sherman*, 2019 WL 3220585, at *3-4; *see also Chavez*, 2019 WL 1367812, at *2 ("failure to plead at least one occasion on which [the plaintiff] was impeded from taking a … rest break likely runs afoul of the Ninth Circuit's decision in *Landers*"). Accordingly, Defendants' motion to dismiss the fourth claim for relief is granted.

**F.      Fifth Claim for Relief: Meal Periods**

Plaintiffs also seek to hold Blue Diamond Growers liable for failure to provide meal periods pursuant to Cal. Lab. Code § 512 and Wage Order 8 (Doc. 12 at 20-21), which require employers to provide non-exempt employees with an uninterrupted meal period of at least thirty minutes for each work period of five hours, and two meal periods for each period of ten hours. *See* Cal. Lab. Code § 512; 8 Cal. Code Regs. § 11080(11). Wage Order 8 explains: "Unless the employee is relieved of all

---

[6] To the extent Defendants assert that most Plaintiffs and class members were not in positions in which "they would have regular access to radios, let alone be 'required' to have them on" (Doc. 16-1 at 16, n.7), this argument goes to the merits of the claim. However, the Court notes that a plaintiff who did *not* use a radio—and thus was not subject to the alleged policy requiring the radios be on—may not have standing to represent any class premised upon this policy. *See O'Shea v. Littleton*, 414 U.S 488, 494 (1974) (a named plaintiff must have a "personal stake in the outcome" and be a member of the class that he or she seeks to represent for the class to be certified).

duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked."  8 Cal. Code Regs. § 11080(11)(C). "[E]mployers fulfill their obligation to provide meal periods to their employees when they relieve their employees of all duty, relinquish control over their activities and permit them a reasonable opportunity to take an uninterrupted 30-minute break, and do not impede or discourage them from doing so." *Rodriguez,* 896 F.3d at 956 (internal quotation marks, citation omitted).  For each workday an employer fails to provide such meal periods, the employer must pay "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal [period]… is not provided." Cal. Lab. Code § 226.7.

Plaintiffs allege that "[they] and the Class were also required to wear radios in the 'on' position during their meal periods and were required to respond to their radios for work related matters without compensation."  (Doc. 12 at 15, ¶ 53.)  Thus, Plaintiffs' meal period claim is based upon the same alleged unlawful policy as the rest period claim.  Given the lack of factual allegations identifying any week in which Plaintiffs suffered a meal period violation, this claim suffers the same deficiencies as the rest break claim, and similarly fails.  *See, e.g., Perez*, 2020 WL 4344911, at * 8 ("To successfully state a meal [break] … claim, plaintiffs must allege facts specifically identifying an instance where they were deprived of a meal [break]"); *see also Wyland v. Berry Petroleum Company, LLC*,  2019 WL 1047493, at *7 (E.D. Cal. Mar. 5, 2019) (finding the allegation that a plaintiff was required to remain "on call" during meal breaks was "conclusory and devoid of any factual detail" that would support a plausible claim).  Consequently, the claim for meal period violations is also dismissed.

**G.      Sixth Claim for Relief: Wages Due at Termination or Resignation**

Plaintiffs seek to hold Blue Diamond Growers liable for "failure to pay all earned wages at termination or resignation," pursuant to California Labor Code Sections 201 and 202, which set deadlines for paying employees unpaid wages.  (Doc. 12 at 22, emphasis omitted.)  Plaintiffs allege Luis Barajas was discharged on or about August 15, 2018; Maria Vargas was discharged on or about March 25, 2018; and Elba Vizcaino was discharged on or about March 12, 2018.  (*Id.*, ¶ 93.)  Plaintiffs contend they "were not paid all earned wages at the time of the end of the employment" with Blue Diamond Growers." (*Id.*)  According to Plaintiffs, Blue Diamond Growers' "custom, practice, and/or policy was not to pay for previously earned minimum, overtime, or unrecorded time spent under

1    Defendant's control, at the time that final wages were paid." (*Id.*) Also, Plaintiffs assert the failure to

2    pay all wages owed was "willful conduct," such that "Plaintiffs and Class Members are entitled to 30

3    days' wages as a penalty under Labor Code § 203." (*Id.* at 22-23, ¶ 94.)

4           Defendants argue the claim for wages due fails because the "allegations constitute nothing

5    more than recitations of the statutory elements of violations of Labor Code Sections 201 through 203."

6    (Doc. 16-1 at 20.) Defendants observe there are no allegations concerning "the dates each of [the

7    plaintiffs] received their final paychecks, the amounts of the paychecks, or even the amounts they

8    purportedly should have received, sufficient to sustain a claim for failure to pay wages upon

9    termination." (*Id.* citing, *e.g., Partida Stater Bros. Markets,* 2019 WL 1601387, at *7 (C.D. Cal. Feb.

10   19, 2019); *Lopez v. Aerotek, Inc.*, 2015 WL 4504691, at *2 (C.D. Cal. July 23, 2015); *Perez,* 2020 WL

11   4344911, at *8.) Because all Plaintiffs "allege they were 'discharged' from their employment,"

12   Defendants assert Plaintiffs fail to plead the underlying statutory provisions for a violation of Section

13   202. (*Id.*, citing Doc. 12, ¶ 93.) Finally, Defendants assert any claim for penalties also fails because

14   there are no "facts to support the requisite element that any Defendants committed a "willful" violation

15   under Section 203." (*Id.* at 21.) Thus, Defendants conclude "Plaintiffs' claims failure to pay all wages

16   earned at termination or resignation, as well as their attendant claims for waiting time penalties

17   pursuant to Section 203, must be dismissed." (*Id.*)

18           1.      Claim under Section 202

19           Section 202 states "[i]f an employee ... *quits* his or her employment, his or her wages shall

20   become due and payable not later than 72 hours thereafter..." Cal. Lab. Code § 202. (emphasis added.)

21   However, Plaintiffs allege they were each "discharged" from their employment, which implies they

22   were terminated. (*See* Doc. 12 at 22, ¶ 93.) This inference is consistent with the opposition to the

23   motion to dismiss, in which Plaintiffs report that "they were not tendered all wages at the time of

24   *termination*." (Doc. 17 at 12, emphasis added.) Plaintiffs do not respond to Defendants' argument

25   that Plaintiffs cannot state a claim under Section 202 if their employment was terminated by the

26   employer. (*See id.* at 12-13.)

27           Importantly, a plaintiff who was terminated is not able to state a claim for relief under Section

28   202, because a "plaintiff could not have both resigned and been terminated at the same time." *Perez v.*

*DNC Parks & Resorts at Sequoia*, 2020 WL 4344911 *8 (E.D. Cal. July 29, 2020); *see also Pineda v. Bank of Am., N.A.,* 50 Cal. 4th 1389, 1394 (2010) (explaining Section 202 applies only "to employees who quit").  Thus, it appears each of the named plaintiffs lacks standing to state a claim based upon Section 202 for wages due.

### 2.     Claim under Section 201

Section 201 provides that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."  Cal. Lab. Code § 201.  In support of this claim, Plaintiffs contend Blue Diamond Growers failed "to pay for previously earned minimum, overtime, or unrecorded time spent under Defendant's control."  (Doc. 12 at 22, ¶ 93.) Unpaid minimum wages could "form the basis of a claim for failure to timely pay wages upon termination."  *Johnson v. Winco Foods, LLC*, 2018 WL 6017012, at *16 (C.D. Cal. Apr. 2, 2018). Similarly, unpaid overtime wages may support a claim under Section 201.  *Rodriguez v. Old Dominion Freight Line*, 2013 WL 12474377, at*5 (C.D. Cal. June 18, 2013) (finding the plaintiff "stated a claim for unpaid overtime… [and] may pursue a § 201(a) claim to recover those unpaid wages").

As discussed above, Plaintiffs did not allege facts sufficient to state plausible claims for minimum wage violations—based upon alleged unrecorded time— or overtime wages violations. Consequently, these claims cannot support Plaintiffs' claim under Section 201.  *See, e.g., Hines*, 2021 WL 4432833, at *7 (the plaintiff failed to state a claim for wages due on termination where he did not sufficiently plead overtime or minimum wage claims); *Sherman*, 2019 WL 3220585, at *6 (finding a claim for wages due failed where it was "wholly derivative" of meal and rest break violations that the plaintiff failed to support with sufficient factual allegations).  Consequently, to the extent this cause of action is based upon a violation of Section 201, dismissal is likewise appropriate.

### 3.     Penalties under Section 203

Plaintiffs seek penalties under Cal. Lab. Code § 203 for the failure to comply with the deadlines identified in Sections 201 and 202.  (Doc. 12 at 23.)  Where an employer willfully fails to comply with Sections 201 and 202 upon an employee's separation, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Labor Code § 203(a).  "A

1   willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer

2   intentionally fails to pay wages to an employee when those wages are due." 8 Cal. Admin. Code §

3   13520; *see also Barnhill v. Robert Saunders & Co.*, 125 Cal.App.3d 1, 7-8 (1981) ("[A]n employer's

4   refusal to pay need not be based on a deliberate evil purpose to defraud workmen of wages which the

5   employer knows to be due. As used in section 203, 'willful' merely means that the employer

6   intentionally failed or refused to perform an action which was required to be done").

7        Because Plaintiffs failed to allege sufficient facts to support a claim for a violation of Section

8   201, and appear to lack standing under Section 202, Plaintiffs also fail to support their claim for

9   waiting time penalties under Section 203.  Accordingly, Defendants' request for dismissal of the sixth

10  claim for relief is granted.

11       **H.     Seventh Claim for Relief:  Unfair Competition Law**

12       Plaintiffs' claim in the FAC is for a violation of California's Unfair Competition Law, as set

13  forth in Cal. Bus. & Prof. Code § 17200, *et seq.* (Doc. 12 at 23.)  Under Section 17200, unfair

14  competition includes any "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof.

15  Code § 17200.  Therefore, there are three prongs under which a claim may be established under

16  Section 17200.  *Daro v. Superior Court*, 151 Cal.App.4th 1079, 1093 (2007) ("a business act or

17  practice need only meet one of the three criteria—unlawful, unfair, or fraudulent—to be considered

18  unfair competition"); *see also Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 731 (9th Cir. 2007)

19  ("[e]ach prong … is a separate and distinct theory of liability").  Given the disjunctive nature of the

20  prongs, an action may be unfair even if it is not unlawful.  *Cel-Tech Communications., Inc. v. Los*

21  *Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 181 (1999).

22            1.     Unfair practices

23       Recently, courts observed that what constitutes "unfair" practices under the UCL is unsettled.

24  *See, e.g., Doe v. CVS Pharm., Inc.*, 982 F.3d 1204, 1214-15 (9th Cir 2020) (identifying various tests

25  established to evaluate the prong); *see also Obertman v. Electrolux Home Care Prods.*, 482 F. Supp 3d

26  1017, 1027 (E.D. Cal. 2020) ("[t]here is some confusion in the law over the applicable test for 'unfair'

27  conduct"); *In re Zoom Video Communs. Privacy Litig.*, 535 F.Supp.3d, 1047 (N.D. Cal. 2021) ("the

28  proper definition of unfair conduct … is currently in flux among California courts" [internal quotation

1   marks omitted]).  The Ninth Circuit observed there are currently three tests for unfair practices:

2       [C]ourts consider either: (1) whether the challenged conduct is "tethered to any
3       underlying constitutional, statutory or regulatory provision, or that it threatens an
        incipient violation of an antitrust law, or violates the policy or spirit of an antitrust
4       law," *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366, 108 Cal. Rptr. 3d
        682 (2010)); (2) whether the practice is "immoral, unethical, oppressive,
5       unscrupulous or substantially injurious to consumers," *Morgan v. AT&T Wireless
        Servs., Inc.*, 177 Cal. App. 4th 1235, 1254, 99 Cal. Rptr. 3d 768 (2009); or (3)
6       whether the practice's impact on the victim outweighs "the reasons, justifications
        and motives of the alleged wrongdoer." *Id.*

7   *Doe,* 982 F.3d at 1215.  Nevertheless, the "traditional test for a consumer claim" is the second

8   identified, which this Court has consistently applied to evaluate claims for unfair practices.  *See*

9   *Obertman*, 482 F. Supp. 3d at 1017.

10      Plaintiffs also seem to rely on the traditional second test identified in *Doe*, asserting the

11  activities of Blue Diamond Growers "constitute unfair practices" because they "violate an established

12  public policy and/or the practice is immoral, unethical, oppressive, unscrupulous and substantially

13  injurious to Plaintiffs, the Class, the public, and other similarly situated employees."  (Doc. 12 at 25,

14  ¶99.)  However, Plaintiffs merely parrot the traditional test and do not allege any *facts* to support their

15  claim.  *Compare with McKell v. Washington Mutual, Inc.,* 142 Cal. App. 4th 1457, 1473 (2006) ("A

16  business practice is unfair within the meaning of the UCL if it violates established public policy or if it

17  is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its

18  benefits").

19      Given the lack of factual allegations, Plaintiffs fail to state a claim under this prong.  *See Teton*

20  *Global Invs. LLC v. LC Inv. 2010,* 2021 WL 5861565, at *3 (S.D. Cal. Aug. 11, 2021) ("specific facts

21  must be pled to support a theory of an unfair business practice").

22                  2.      Fraudulent practices

23      A "fraudulent" act is "one which is likely to deceive the public," and "may be based on

24  misrepresentations … which are untrue, and also those which may be accurate on some level, but will

25  nonetheless tend to mislead or deceive." *McKell*, 142 Cal. App. 4th at 1474.  Thus, the word

26  "fraudulent" under Section 17200 "does not refer to the common law tort of fraud," *Puentes v. Wells*

27  *Fargo Home Mortg., Inc.,* 160 Cal. App. 4th 638, 645 (2008), but still requires allegations that the

28  misrepresentation was directly related to injurious conduct, and that the claimant actually relied on the

alleged misrepresentation.  *In re Tobacco II Cases*, 46 Cal.4th 298, 336-37 (2009).  Further, claims based upon the "fraudulent" prong are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1127 (9th Cir. 2009).

Plaintiffs assert Blue Diamond Growers "falsely den[ied] the amount or validity" of wages due and acted with an intent to defraud class members.  (Doc. 12 at 24, ¶ 98(d).)  However, Plaintiffs do not identify any specific misrepresentation made by Blue Diamond Growers, or assert they relied upon the misrepresentation.  The sparse allegations fail to comply with Rule 8, let alone satisfy the heightened pleading requirements of Rule 9.  Because Plaintiffs fail to plead the circumstances surrounding the alleged fraud with particularity, the UCL claim is not cognizable to the extent it is based upon the "fraudulent" acts prong.

### 3.   Unlawful practices

Plaintiffs seek to hold Blue Diamond Growers liable for "unlawful practices" under Section 17200.  (Doc. 12 at 25, ¶ 100; *see also* Doc. 17 at 13 [arguing sufficiency of the claim under "the unlawful prong"].)  The business acts proscribed under the "unlawful" prong of Section 17200 includes "anything that can properly be called a business practice and that at the same time is forbidden by law." *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992) (quoting *Barquis v. Merchants Collection Assoc.*, 7 Cal.3d 94, 113 (1972)).  In essence, the UCL "borrows violations of other laws and treats them as unlawful practices independently actionable under Section 17200." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 839 (1994) (internal quotation marks, citation omitted).

"To state a claim under the unlawful prong of the UCL, a plaintiff must plead: (1) a predicate violation, and (2) an accompanying economic injury caused by the violation." *Aerojet Rocketdyne, Inc. v. Global Aero., Inc.*, 2020 WL 3893395, at *6 (E.D. Cal. July 10, 2020) (citation omitted); *see also Berryman v. Merit Property Management, Inc*., 152 Cal. App. 4th 1544, 1554 (2007) ("a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong").  Predicate violations include "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders*, 27 Cal. App. 4th at 838-39.

Plaintiffs assert they "plainly met the requirements to adequately state predicate violations under the UCL."  (Doc. 17 at 13.)  Specifically, Plaintiffs identified the following predicate violations

in their FAC:

     a.  Violations of the FLSA, 29 U.S.C. §201, et seq. by failing to pay overtime compensation;

     b. violation of California Labor Code § 1194 (relating to failure to pay minimum wages);

     c.  violation of California Labor Code § 510 (relating to the failure to compensate at the rate of no less than one and one-half times the regular rate of pay for all work in excess of eight hours in one workday and any work in excess of 40 hours in any workweek, or else the failure to compensate at the rate of no less than one and one-half times the regular rate of pay for all work in excess of ten hours in one workday and any work in excess of 6 days in any workweek);

     d.  violation of California Labor Code § 216 by willfully refusing to pay wages due and payable by falsely denying the amount or validity thereof, or that the same is due, with intent to secure for itself any discount upon such indebtedness, and with intent to annoy, harass, oppress, hinder, delay, or defraud, the Class Members to whom such indebtedness is due;

     e.  violation of California Labor Code § 226.7 by requiring Class Members to work during rest periods (or not paying Class Members during breaks taken) mandated by the applicable Wage Order and failing to provide said Class Members one (1) hour additional wages at the non-exempt employee's regular rate of compensation for each work day that the meal or rest period is not provided;

     f.  violation of California Labor Code §§ 512, 226.7 and IWC wage orders by failing to provide timely, uninterrupted, 30-minute meal periods or premiums; []

     g.  violation of California Labor Code § 201, 202 and 203 by failing to pay all wages earned and unpaid at the time of certain Class Members' discharge from employment by [Blue Diamond Growers]

     h.  Violation of California Labor Code § 204 by failing to compensate Plaintiffs and Class Members for all wages earned twice during the calendar month.

     i.  Violation of California Labor Code § 214 by failing to tender to Plaintiffs and Class Members lawful checks or payments while under Defendant's employ.

     j.  Violation of California Labor Code §§ 216 and 218 by willfully refusing to pay all wages due and for securing a discount on Defendant's indebtedness by retaining all wages owed to Plaintiffs and Class Members.

     k.  Violation of California Labor Code § 221 by collecting and retaining the wages earned by Plaintiffs and Class Members.

     l.  Violation of California Labor Code § 1199 by failing to pay to Plaintiffs and Class Members less than the minimum wage.

(Doc. 12 at 23-24, ¶ 98 (sic).)  Defendants argue these alleged predicate violations do not support

Plaintiffs' claim and dismissal is appropriate.  (Doc. 16-1 at 21-22.)

     Importantly, a plaintiff must allege facts to support any alleged predicate violations of state and

federal law.  *See Berryman v. Merit Property Management, Inc*., 152 Cal. App. 4th 1544, 1554 (2007). For example, if a plaintiff alleges facts sufficient to support claims of violations of the FLSA and California Labor Code, the federal and state statues are proper predicate violations under the UCL. *See, e.g., Duarte v. Mzr Inc.*, 2010 WL 11586755, at *7 (N.D. Cal. July 8, 2010) (finding where the plaintiff "allege[d] several violations of federal and state labor statutes, including the Fair Labor Standards Act and California Labor Code …, [the statutory claims] may serve as predicate violations under the 'unlawful' prong of the UCL").  Conversely, if a plaintiff fails to state a claim under the "borrowed" law, it cannot support the UCL claim.  *Pellerin v. Honeywell Int'l, Inc*., 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012) (a claim under the UCL "must be dismissed if the plaintiff has not stated a claim for the predicate acts upon which he bases the claim").

As discussed above, Plaintiffs failed to allege facts sufficient to support their claims for overtime wages, minimum wages, meal periods, rest breaks, and failure to pay wages due upon termination.  Consequently, these alleged violations cannot support their UCL claim.  *See Pellerin*, 877 F. Supp. 2d at 992; *see also Dooms v. Fed Home Loan Mortg. Corp.*, 2011 WL 1232989 at *21 (E.D. Cal. Mar. 31, 2011) ("[r]eliance on other invalid claims alleged in the complaint fails to support a viable UCL claim").  In addition, Plaintiffs identify violations of Labor Code §§ 204, 214, 218, 221 and 1199 as predicate violations.  (*See* Doc. 12 at 23-24, ¶ 98.)  However, Plaintiffs do not allege any factual allegations to support these claims.  For example, Plaintiffs do not allege how frequently they received paychecks from Blue Diamond Growers, such that the Court may determine there was a violation of Cal. Lab. Code § 204, under which wages "earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays."[7]  Similarly, Plaintiffs fail to allege how, or in what manner, Blue Diamond Growers collected any wages previously paid to its employees in violation of Cal. Lab. Code § 221. Plaintiffs also do not explain how Sections 214 and 218—which address where an action may be prosecuted and the authority of the district or prosecuting attorney—relate to their claims or caused an economic injury to Plaintiffs.  *See* Cal. Lab. Code §§ 214, 218.  Given the scarcity of factual

---

[7] Notably, Section 204 requires only "payment of wages in a timely manner; it does not provide a right to wages." *Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1136 (N.D. Cal. 2011), *aff'd* 546 Fed. App'x 613 (9th Cir. Sept. 5, 2013).

1  allegations, Plaintiffs also fail to support their claim for a violation of Section 17200 under the unlawful

2  prong, and the UCL claim is dismissed.

### I.   Request for Injunctive Relief

4         Plaintiffs seek injunctive relief directing Defendants "to comply with all applicable California

5  labor laws and regulations in the future and preventing [Blue Diamond Growers] from engaging in and

6  continuing to engage in unlawful and unfair business practices."  (Doc. 12 at 3, ¶ 7.)  With the UCL

7  claim, Plaintiffs assert they "are entitled to injunctive and other equitable relief against such unlawful

8  practices in order to prevent future damage, for which there is no adequate remedy at law, and to avoid

9  a multiplicity of lawsuits."  (*Id.* at 25, ¶ 100; *see also id.*, ¶¶ 101-102.)  Finally, in the prayer for relief,

10  Plaintiffs request that Defendants "be enjoined from continuing the unlawful course of conduct

11  alleged."  (*Id.* at 26, ¶ 6.)

12        Defendants assert that "Plaintiffs lack standing to pursue injunctive relief" because they are

13  former employees of Blue Diamond Growers.  (Doc. 16-1 at 24-25.)  Defendants contend, "It is well-

14  settled that former employees lack standing to bring a claim for injunctive relief against their

15  employers because they do not stand to benefit from the injunction."  (*Id.* at 24, citing, *e.g., Wal-Mart*

16  *Stores, Inc. v. Dukes*, 564 U.S. 338, 364 (2011) [finding that named plaintiffs in a class action case

17  lack standing to sue for injunctive relief regardless of whether the certified class included both current

18  and former employees of the defendant-employer]; *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d

19  1033, 1037 (9th Cir. 2006) [holding a former employee  "lacked standing to sue for injunctive relief

20  from which she would not likely benefit"].)  Thus, Defendants argue the references to injunctive

21  relief—found in the Prayer and Paragraphs 7, 21, 22, 27, 37(j), 37(k), 100, 101, 102—should be

22  dismissed.  (*Id.* at 25.)

23        Plaintiffs oppose dismissal of their claim for injunctive relief, asserting "law surrounding UCL

24  is clear" and "[p]laintiffs asserting a UCL claim may obtain injunctive relief against unfair or unlawful

25  practices."  (Doc. 17 at 16, citing *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1144

26  (2003).)  According to Plaintiffs, the allegations in the FAC "give[] rise to a UCL claim predicated on

27  Labor Code § 203," for which "Plaintiffs plainly have standing to seek injunctive relief against

28  Defendant Blue Diamond Growers."  (*Id.*)  Plaintiffs maintain they "stand to benefit from an injunction

against Defendants as they are entitled to their wages earned but retained by Defendants." (*Id.*)

Significantly, a state statute such as California's Unfair Competition Act cannot alter the constitutional standing requirements of federal courts, even for public policy reasons. *See Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1022 (9th Cir. 2004).  The Ninth Circuit explained:

> Even if Cal. Bus. & Prof. Code § 17204 permits a plaintiff to pursue injunctive relief in California state courts as a private attorney general even though he or she currently suffers no individualized injury as a result of a defendant's conduct, a plaintiff whose cause of action [under § 17204] is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury" to establish Article III standing.

*Id.*, quoting *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-1002 (9th Cir. 2001) (modification in original). The Ninth Circuit observed that "Article III standing requires an injury that is actual or imminent, not conjectural or hypothetical," and a plaintiff seeking injunctive relief "must demonstrate a real or *immediate threat* of an irreparable injury." *Id.* at 1021 (citation omitted, emphasis in original). Without a "contractual relationship" between the parties, the Ninth Circuit found there was no personal threat of injury, and Hangarter lacked standing to pursue injunctive relief under California's Unfair Competition Act.  *Id.*

In the employment context, the Ninth Circuit repeatedly applied this principal of standing and determined a "former employee has no claim for injunctive relief addressing the employment practices of a former employer absent a reasonably certain basis for concluding he or she has some personal need for prospective relief."  *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017); *see also Walsh*, 471 F.3d at 1036-37 (concluding that a plaintiff lacked standing for an injunction requiring her former employer to adopt and enforce lawful policies); *Slayman v. FedEx Ground Package System, Inc.*, 765 F.3d 1033, 1048 (9th Cir. 2014) ("Because none of the *Slayman* class's named plaintiffs worked for FedEx at the time the complaint was filed, the *Slayman* class lacked Article III standing to seek prospective relief.").  District courts concluded similarly where—as here—plaintiffs seek injunctive relief mandating a former employer's compliance with the California Labor Code.  *See, e.g., Perez v. Leprino Foods Co.,* 2018 WL 1426561, at *6 (E.D. Cal. Mar. 22, 2018) (dismissing a demand for injunctive relief because "it is well-settled that former employees lack standing to seek injunctive relief to ensure their former employers compliance with the California Labor Code") (internal quotation

1  omitted); *Ahmed v. Western Refining Retail, LLC*, 2021 WL 2548958, at *7 (C.D. Cal. May 13, 2021)

2  (dismissing a request for injunctive relief under the UCL because Plaintiff, a former employee, failed to

3  establish a "personal need for prospective injunctive relief"); *Ramirez v. Manpower, Inc*., 2014 WL

4  116531, at *7 (N.D. Cal. Jan 13, 2014) ("a former employee lacks standing to seek prospective

5  injunctive relief"); *see also Aldapa v. Fowler Packing Co., Inc*., 323 F.R.D. 316, 330-331 (E.D. Cal.

6  Jan. 24, 2018) (holding that a former employee could not seek injunctive relief on behalf of a putative

7  class of present employees).

8      Because Plaintiffs did not allege any facts sufficient to support a conclusion that they have a

9  need for *prospective* relief—or even could benefit from it— as former employees of Blue Diamond

10  Grower, they lack standing to purse injunctive relief.  *See Slayman*, 765 F.3d at 1048; *Walsh*, 471 F.3d

11  at 1036-37; *see also City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (2003) (prospective injunctive

12  relief "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where

13  there is no showing of any real or immediate threat that the plaintiff will be wronged again…").

14  Accordingly, Plaintiffs' request for injunctive relief is dismissed with prejudice.

15      **J.      Remedy of Disgorgement**

16      Plaintiffs request disgorgement under the Unfair Competition Law.  (*See, e.g.,* Doc. 12 ¶¶ 22,

17  27, 100-102.)  Plaintiffs seek "restitutionary disgorgement of all wages earned by Plaintiff[s] and the

18  class but retained by [Blue Diamond Growers]." (*Id.* at 7, ¶ 22.)  In addition, Plaintiffs request

19  "disgorgement of all profits or benefits retained by Defendants as a result of their failure to comply"

20  with the California Labor Code.  (*Id.* at 8, ¶ 27.)  According to Plaintiffs,

21      As a result of their unlawful acts, [Blue Diamond Growers] has reaped and
        continue to reap unfair benefits and unlawful profits at the expense of Plaintiff, and
22      other similarly situated employees. The [Blue Diamond Growers] should be
        enjoined from this activity and made to disgorge these ill-gotten gains and restore
23      to Plaintiffs and the Class the wrongfully withheld wages pursuant to Business and
        Professions Code § 17203.
24

25  (*Id.* at 25, ¶ 101.)  Defendants argue that "Plaintiffs' demand for disgorgement under the UCL claim is

26  independently improper, and must be stricken from the FAC." (Doc. 16-1 at 25.)  Defendants observe

27  "disgorgement is not an available remedy under the UCL." (*Id.*, citing *Woo v. Home Loan Group,*

28  *L.P.*, 2007 WL 6624925, at *7 (S.D. Cal. Jul. 27, 2007); *Cortez v. Purlator Air Filtration Prods.*, 23

Cal. 4th 163, 172 (2000).)

Notably, under California law, there are two types of disgorgement remedies: "restitutionary disgorgement, which focuses on the plaintiff's loss, and nonrestitutionary disgorgement, which focuses on the defendant's unjust enrichment." *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 800 (2015) (emphasis omitted). The California Supreme Court determined that "while *restitutionary* disgorgement may be an available remedy under the UCL, *nonrestitutionary* disgorgement is *not* available in a UCL individual action or in a UCL representative action…." *Id.* (quoting *Madrid v. Perot Systems Corp*., 130 Cal.App.4th 440, 460 (2005) [emphasis in original]); *see also Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1148 (2003) (explaining the court "never approved of nonrestitutionary disgorgement of profits as a remedy under the UCL," and "prior cases discussing the UCL … [were] referring to the restitutionary form of disgorgement").

Plaintiffs acknowledge "non-restitutionary disgorgement is not available in UCL claims," but maintain the "FAC indicated clearly they are seeking restitutionary disgorgement." (Doc. 17 at 16-17.) However, Plaintiffs assert in the FAC that Blue Diamond Growers "reaped and continue to reap unfair benefits and unlawful profits" and "should be enjoined from this activity and *made to disgorge these ill-gotten gains*." (Doc. 12 at 25, ¶ 101, emphasis added.) Because this request focuses upon the alleged "unjust enrichment" of Blue Diamond Growers, it is an indisputably a request for nonrestitutionary disgorgement. *See In re Tobacco Cases II*, 240 Cal. App. 4th at 800; *Korea Supply*, 29 Cal.4th at 1148. As this remedy is unavailable under the UCL, Plaintiffs' request for nonrestitutionary disgorgement is stricken. *See, e.g., Henderson v. J.M. Smucker Co.*, 2011 WL 1050637, at *3 (C.D. Cal. Mar. 17, 2011) (striking a prayer for "disgorgement of the funds by which [the defendant] was unjustly enriched"); *Woo v. Home Loan Group, L.P.*, 2007 WL 6624925, at *7 (S.D. Cal. July 27, 2007) (granting a request to strike "a request for disgorgement of revenues, earnings, profits, compensation and benefits" as an unavailable remedy under the UCL).

**K.      References to Cal. Labor Code §§ 204, 214, 216, 218, 221, and 1199**

Defendants request the Court dismiss references to the Labor Code §§ 204, 214, 216, 218, 221, and 1199. (Doc. 16-1 at 23-25-26.) Defendants assert these Sections do not have supporting allegations, do not create an employer obligation, or concerned only criminal matters. (*Id.*) On the

other hand, Plaintiffs contend the identified provisions should not be dismissed, because they relied upon each of sections as predicate violations of the UCL.  (Doc. 17 at 14-15, 17-18.)

Because the sufficiency of all causes of action in the First Amended Complaint were addressed extensively—including the UCL claim in which Sections 204, 214, 216, 218, 221, and 1199 were incorporated as predicate violations—the Court declines to further address the claims previously dismissed above.

## V.     Leave to Amend

Plaintiffs request that if the motions to dismiss or strike are granted, then leave to amend be granted.  (Doc. 17 at 20, citing *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2nd Cir. 1988).)  Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations, internal quotation marks omitted).  When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Id*. at 1130 (internal quotation marks omitted).  Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).

The Court has insufficient information to conclude that amendment is futile due to the sparsity of allegations in the complaint concerning Plaintiffs' employment with Blue Diamond Growers.  In addition, amendment would allow Plaintiffs to clarify the basis for their belief that Denise Horn and Resham Klair are managing agents of Blue Diamond Growers, such that individual liability may be invoked under Cal. Lab. Code § 558.1.  Further, it does not appear amendment would cause undue delay at this juncture, and there is no evidence before the Court suggesting Plaintiffs acted in bad faith.  Thus, the request for leave to amend is granted.

## VI.     Conclusion and Order

For the reasons set forth above, the Court **ORDERS**:

1.      Defendants' motion to dismiss all claims against Denise Horn and Resham Klair is **GRANTED**, with leave to amend the Second, Third, Fourth, and Fifth Claims for Relief.

2.      The Sixth Claim for relief as stated against Denise Horn and Resham Klair is **DISMISSED without leave to amend**.

3.      The motion to dismiss the First, Second, Third, Fourth, Fifth, Sixth, and Seventh Claims for Relief as stated against Blue Diamond Growers is **GRANTED**, with leave to amend.

4.      Plaintiffs' prayer for injunctive relief is **DISMISSED without leave to amend**.

5.      Plaintiffs' request for nonrestitutionary disgorgement is **STRICKEN**.

6.      Plaintiff **SHALL** file any Second Amended Complaint within 45 days of the date of service of this order.  Failure to comply with this order will result in the dismissal of the action for failure to prosecute.

IT IS SO ORDERED.

Dated:   **April 13, 2022**

UNITED STATES DISTRICT JUDGE