1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11

12

13

14

15

16

17

| | |
|---|---|
| LUIS BARAJAS, MARIA VARGAS, and ELBA VIZCAINO on behalf of a class of similarly situated individuals, | ) Case No.: 1:20-cv-0679 JLT SKO )<br>) ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| Plaintiffs, | ) (Doc. 43) ) |
| v. | ) ORDER GRANTING LEAVE TO AMEND ) |
| BLUE DIAMOND GROWERS INC.; *et al*., | ) ) |
| Defendants. | ) ) |

18     Luis Barajas, Maria Vargas, and Elba Vizcaino assert they suffered violations of wage and hour

19   laws as employees of Blue Diamond Growers.  Plaintiffs seek to hold Blue Diamond Growers and

20   Denise Horn liable under federal and state law, stating claims on behalf of themselves and other

21   similarly situated, non-exempt employees.  (*See generally* Doc. 42.)

22     Defendants seek dismissal of all claims in Plaintiffs' Third Amended Complaint pursuant to

23   Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (*See* Doc. 43 at 2-3.)  Defendants also request

24   that the Court strike portions of the pleading pursuant to Rule 12(f).  (*Id.* at 3.)  Plaintiffs oppose the

25   motion, arguing the facts alleged support their claims.  (*See* Doc. 45.)  The Court finds the matter

26   suitable for decision without oral arguments, and no hearing date will be set pursuant to Local Rule

27   230(g) and General Order 618.  For the reasons set forth below, the motion to dismiss is **GRANTED**,

28   and the Third Amended Complaint is dismissed with leave to amend.

I.        **Background and Procedural History**

Plaintiffs were non-exempt employees of Blue Diamond Growers, which owns and operates almond processing plants in California.  (Doc. 42 at 4-5, ¶¶ 13-17.)  Luis Barajas was employed by Blue Diamond Growers from March 2005 until August 15, 2018.  (*Id.* at 9, ¶ 28.)  Maria Vargas worked for Blue Diamond Growers from January 2008 to March 25, 2018.  (*Id.*)  Elba Vizcaino was employed by the company from August 1997 to March 12, 2018.  (*Id.*)  Plaintiffs assert that during their employment, Denise Horn was a managing agent of Blue Diamond Growers.  (*Id.* at 7, ¶ 21.)

Plaintiffs assert Blue Diamond Growers failed to provide compensation "for all hours worked." (Doc. 42 at 10, ¶ 37.)  According to Plaintiffs, Blue Diamond Growers "routinely require[ed] and/or suffered or permitted Plaintiffs and similarly situated employees to work more than 40 hours per week." (*Id.* at 15, ¶ 52.)  Plaintiffs contend Blue Diamond Growers "failed and refused to pay all overtime premiums to Plaintiffs and similarly situated employees for their hours worked in excess of forty hours per week." (*Id.* at 16, ¶ 58; *see also id.* at 20-22, ¶¶ 77-88.)

Plaintiffs contend also that Blue Diamond Growers and Horn are liable for failure to pay minimum wage to employees.  (Doc. 42 at 17-19, ¶¶ 68-71.)  Plaintiffs allege they and other employees "were routinely required to work prior to their scheduled shifts … and after their scheduled shifts, without compensation." (*Id.* at 18, ¶ 69.)  Plaintiffs assert:

> Before the start of each work shift but prior to clocking in, Plaintiffs and other similarly situated employees typically walked into the building through a hallway and donned ear plugs and hair nets and then proceed to walk up the stairs to where their lockers were located, walk back down stairs to grab their protective eight button overcoats and button up all eight buttons in order to keep clothing from getting caught on machinery and then clocked in for the start of the day. This resulted in substantial off the clock unpaid time before the start of each workday. After clocking out at the end of the work shift, Plaintiffs and other similar situated employees regularly unbuttoned their overcoat and walked to place their coat in the laundry bin to be washed.

(*Id.* at 15-16, ¶ 56.)  Plaintiffs estimate that in total, this donning and doffing the protective gear— including hair nets, ear plugs, safety goggles, steel-toed boots, and protective overcoats—took approximately 24 to 30 minutes of time during a six-day workweek, and "resulted in … failure to pay overtime." (*Id.*, ¶¶ 53, 56.)

Plaintiffs allege Defendants failed to provide rest periods in compliance with state law.  (Doc.

42 at 24, ¶¶ 96-99.)  Plaintiffs contend "[they] and the Class did not voluntarily or willfully waive rest

periods.  (*Id.* at 24, ¶ 97.)  However, Blue Diamond Growers "required Plaintiffs and the Class to work

through their rest periods and failed to pay premium wages."  (*Id.*, ¶ 96.)  Plaintiffs assert:

> Plaintiffs and the Class were frequently interrupted during their rest
> breaks to handle issues with machinery. In other instances, Plaintiffs and
> the Class simply were not afforded the opportunity to take rest periods
> and were not compensated with premium wages for these missed and/or
> on duty rest periods. Additionally, Defendants required that Plaintiffs and
> the Class wear radios in the "on" position at all times, including during
> rest periods.

(*Id.* at 24, ¶ 98, emphasis omitted.)  As a result, Plaintiffs contend they "were not relieved of all duties

during their rest periods."  (*Id.*)

Similarly, Plaintiffs assert they "were not afforded meal periods as required by California law."

(Doc. 42 at 26, ¶¶ 106.)  According to Plaintiffs, they and other employees "were required to keep their

radios on during meal periods in case of any malfunctions" and "were routinely required to work during

their meal periods … or were interrupted."  (*Id.*, ¶¶ 106-107 [emphasis omitted].)  For example,

Plaintiffs report they "did not receive meal periods of 30 uninterrupted minutes due to issues with the

machinery, walking to the timekeeping system and placing the required protective gear before the net

30-minute meal period ended and because of Defendants' practice of understaffing shifts."  (*Id.*, ¶ 106.)

Plaintiffs contend Blue Diamond Growers did not provide compensation for meal periods that were

"late, missed, or interrupted."  (*Id.*)

Finally, Plaintiffs assert they "were not paid all earned wages at the time of end of the

employment relationship with [Blue Diamond Growers]."  (Doc. 42 at 28, ¶ 117.)  Plaintiffs allege that

"similarly situated employees were not paid all wages earned at the time of termination or

resignation."  (*Id.*)  "Plaintiffs allege that [Blue Diamond Growers'] custom, practice, and/or policy

was not to pay for previously earned minimum, overtime, or unrecorded time spent under Defendant's

control, at the time that final wages were paid."  (*Id.*)

According to Plaintiffs, Defendants "maintained and enforced unlawful labor policies against

employees that revolve around Defendants' compensation policies and their record-keeping

procedures."  (Doc. 42 at 9, ¶ 29.)  Thus, Plaintiffs seek to bring claims on their own behalf "and all

others similarly situated" Blue Diamond Growers employees with "a Rule 23 opt-out California class

and as an opt-in FLSA Collective Action pursuant to 29 U.S.C. §216 (b)."  (*Id.* at 11, ¶ 39.)  Plaintiffs

propose the classes be defined as:

> California Class: All persons who are employed or have been employed by Blue Diamond Growers in the State of California who, within four (4) year of the filing of the Complaint in this case, worked as non-exempt hourly employees; and
>
> FLSA Collective: All persons who are employed or have been employed by Blue Diamond Growers in the State of California who, within three (3) years of the filing of the Complaint in this case, worked as non-exempt hourly employees.

(*Id.* at 11, ¶ 39, emphasis omitted.)

Based upon the foregoing allegations, Plaintiffs identify the following causes of action in their Third Amended Complaint: (1) failure to pay overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*; (2) failure to pay minimum wage in violation of Cal. Lab. Code §§ 1197, 1194(a), and 1194.2; (3) failure to pay overtime wages in violation of Cal. Lab. Code §§ 510, 1194, 1194.2 and IWC Wage Order 8; (4) failure to provide rest periods or premium wages in violation of Cal. Lab. Code §§ 226.7, 558, and IWC Wage Order 8; (5) failure to provide meal periods or premium wages in violation of Cal. Lab. Code §§ 226.7, 512, 558, and IWC Wage Order 8; (6) failure to pay all earned wages at termination or resignation in violation of Cal. Lab. Code § 203; and (7) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.  (*See generally* Doc. 42 at 14-32.)  Plaintiffs seek declaratory relief; compensatory damages; "restitution … due to their unfair competition," and "premium pay wages, and penalties."  (*Id.* at 32.)

Defendants filed the motion to dismiss and strike portions of the Third Amended Complaint on August 9, 2022.  (Doc. 43.)  Plaintiffs filed an opposition to the motion on August 23, 2022 (Doc. 45), to which Defendants filed a reply on September 2, 2022 (Doc. 46).

## II.    Motions to Dismiss

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In ruling on a motion to dismiss filed pursuant to Rule 12(b), the Court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

1        Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable

2  legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp.*

3  *Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Thus, "[t]o survive a motion to dismiss, a complaint

4  must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

5  face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

6  570 (2007)).  The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content
> that allows the court to draw the reasonable inference that the defendant is
> liable for the misconduct alleged. The plausibility standard is not akin to a
> "probability requirement," but it asks for more than a sheer possibility that
> a defendant has acted unlawfully. Where a complaint pleads facts that are
> "merely consistent with" a defendant's liability, it "stops short of the line
> between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted). When considering a motion to dismiss, the Court

must accept the factual allegations made in the complaint as true.  *Hospital Bldg. Co. v. Rex Hospital*

*Trustees*, 425 U.S. 738, 740 (1976).  A court must construe the pleading in the light most favorable to

the plaintiffs and resolve all doubts in favor of the plaintiffs. *Jenkins v. McKeithen*, 395 U.S. 411, 421

(1969).  However, legal conclusions need not be taken as true when "cast in the form of factual

allegations."  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

        "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled

to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a

recovery is very remote and unlikely but that is not the test."  *Scheuer v. Rhodes*, 416 U.S. 232, 236

(1974).  The Court "will dismiss any claim that, even when construed in the light most favorable to

plaintiff, fails to plead sufficiently all required elements of a cause of action."  *Student Loan Marketing*

*Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  To the extent pleadings can be cured by the

plaintiff alleging additional facts, leave to amend should be granted.  *Cook, Perkiss & Liehe, Inc. v.*

*Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## III.    Requests to Strike

        Pursuant to Rule 12(f), a district court "may strike from a pleading … any redundant,

immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A "redundant" matter is

comprised "of allegations that constitute a needless repetition of other averments or which are foreign

1   to the issue to be denied." *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005).  An immaterial

2   matter "has no essential or important relationship to the claim for relief or the defenses being pleaded,"

3   while an "[i]mpertinent matter consists of statements that do not pertain, and are not necessary, to the

4   issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other*

5   *grounds* (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at

6   706-07, 711 (1990)).

7        The purpose of a Rule 12(f) motion "is to avoid the expenditure of time and money that must

8   arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v.*

9   *A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  Generally, motions to strike "are disfavored and

10  infrequently granted." *Neveau v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005).  In

11  reviewing a motion to strike, the court must view the pleadings under attack in the light most favorable

12  to the pleader. *Lazar v. Trans Union LLC*, 195 F.R.D. 665, 669 (C.D. Cal. 2000).  "If there is any

13  doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny

14  the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F.Supp.2d 1048, 1057 (N.D. Cal. 2004).

15  **IV.    Discussion and Analysis**

16       Defendants seek dismissal of all causes of action in the Third Amended Complaint, asserting

17  the facts alleged are insufficient to support Plaintiffs' claims for relief.  (*See* Doc. 43-1 at 10-19.)

18  Defendants request the Court strike "references to Labor Code sections that have no private right of

19  action, do not create employer obligations, or which Plaintiffs make no effort to allege a violation."

20  (*Id.* at 19, emphasis omitted.)  Plaintiffs argue the Court should deny the motion, asserting the facts

21  alleged are sufficient to support their claims, including the challenged Labor Code sections under

22  California's Unfair Competition Law. (*See* Doc. 45 at 8-22.)

23       **A.    Liability of the Individual Defendant**

24       Plaintiffs indicate "[t]he core violations" alleged against Horn include: "causing the: [1] failure

25  to pay all minimum wages owed; [2] failure to pay all overtime wages owed; [3] failure to provide rest

26  periods or pay additional wages; [and] [4] failure to provide [meal] periods or pay additional wages."[1]

27

28

---

[1] For clarity, the Court corrected the errors in numbering that appear in the Third Amended Complaint.  (*See* Doc. 42 at 3.)

6

(Doc. 42 at 3, ¶ 5.)  Plaintiffs seek to hold Horn liable for each of these alleged violations under Labor Code § 558.1.  (*See id.* at 6-7, 18-19, 22, 24-25, 27, ¶¶ 18, 22, 70, 88, 99, 113.)  Defendants contend all claims raised against Denise Horn should be dismissed, asserting Plaintiffs fail to allege facts sufficient to hold Horn liable as a "managing agent" of Blue Diamond Growers.  (Doc. 43-1 at 18-19.)

Under California law, an "employer or other person acting on behalf of any employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation."  Cal. Lab. Code § 558.1(a).  The law limits the phrase "other person acting on behalf of an employer" to describing "a natural person who is an owner, director, officer, or managing agent of the employer."  Cal. Lab. Code § 558.1(b).  Thus, only an employer, owner, director, officer, or managing agent may be held liable for violations of the wage orders or the identified provisions of the California Labor Code.  *See id.*  It appears undisputed that Horn is not an owner, director, or officer of Blue Diamond Growers.  However, the parties disagree whether the allegations are sufficient to show Horn is a "managing agent," such that individual liability may be invoked under Section 558.1.  (*See* Doc. 43-1 at 18-19 ; Doc. 17 at 21-22.)

The term "managing agent," includes "only those corporate employees who exercise substantial independent authority and judgment in their corporate decisionmaking so that their decisions ultimately determine corporate policy."  *White v. Ultramar, Inc.*, 21 Cal.4th 563, 566-67 (1999).[2]  These are corporate policies that "affect a substantial portion of the company and that are the type likely to come to the attention of corporate leadership."  *Roby v. McKesson Corp.*, 47 Cal.4th 686, 714 (2009). Accordingly, a "managing agent" is "more than a mere supervisory employee."  *Id.* at 573.  The California Supreme Court explained:

> [S]upervisors who have broad discretionary powers and exercise substantial discretionary authority in the corporation can be managing agents.  Conversely, supervisors who have no discretionary authority over decisions that ultimately determine corporate policy would not be considered managing agents even though they may have the ability to hire

---

[2] *White* addressed the term "managing agent" within the meaning of Cal. Civil Code § 3294(b).  *See White*, 21 Cal. 4th at 566.  However, Section 558.1 indicates "the term 'managing agent' has the same meaning as in subdivision (b) of Section 3294 of the Civil Code."  Cal. Lab. Code § 558.1.  Thus, *White* and its progeny are instructive on the meaning of the term.

1    or fire other employees.

2    *White*, 21 Cal.4th at 577.  The "critical inquiry is the degree of discretion the employees possess in

3    making decisions."  *King v. U.S. Bank Nattional Assoc.*, 53 Cal.App.5th 675, 713 (2020) (citation

4    omitted).  Notably, the scope of an "employee's discretion and authority is … a question of fact for

5    decision on a case-by-case basis."  *White*, 21 Cal.4th at 567; *see also Taylor v. Trees, Inc.,* 58

6    F.Supp.3d 1092, 1106 (E.D. Cal. 2014) ("[w]hether employees exercise sufficient authority is

7    determined on a case-by-case basis").

8        In *White*, the plaintiff worked at a store owned by Ultramar, which owned several stores and

9    employed "zone managers" for regions.  *See id.*, 21 Cal.4th at 566, 577.  White asserted the zone

10   manager over his store, Lorraine Salla, was a "managing agent" of Ultramar.  *See id.* at 566-68.  The

11   court observed:

12   > As the zone manager for Ultramar, Salla was responsible for managing
13   > eight stores, including two stores in the San Diego area, and at least sixty-
     > five employees. The individual store managers reported to her, and Salla
14   > reported to department heads in the corporation's retail management
     > department.

15   > The supervision of eight retail stores and sixty-five employees is a
     > significant aspect of Ultramar's business. The testimony of Salla's
16   > superiors establishes that they delegated most, if not all, of the
17   > responsibility for running these stores to her. The fact that Salla spoke
     > with other employees and consulted the human resources department
18   > before firing plaintiff does not detract from her admitted ability to act
     > independently of those sources.

19   *Id.* at 577.  The court found that while "Salla's supervision of plaintiff and her ability to fire him alone

20   were insufficient to make her a managing agent," the evidence also showed "Salla exercised substantial

21   discretionary authority over vital aspects of Ultramar's business that included managing numerous

22   stores on a daily basis and making significant decisions affecting both store and company policy."  *Id.*

23   Accordingly, the Court concluded Salla was a "managing agent" of Ultramar.  *Id.* at 578.

24       Following *White*, courts decline to find employees are managing agents when the facts do not

25   show the employee was vested with discretionary authority over the business.  *See, e.g., Taylor v.*

26   *Trees, Inc.,* 58 F.Supp.3d 1092, 1106-07 (E.D. Cal. 2014) (evaluating the facts upon a motion for

27   summary judgment); *Gonzalez v. Sheraton Operating Corp.*, 2020 WL 7042817, at *1-2 (C.D. Cal.

28   Dec. 1, 2020) (finding conclusory allegations that the plaintiff's supervisor was a "an owner director,

officer, or managing agent" to be insufficient to invoke liability under Section 558.1); *Nguyen v. Ericsson, Inc.*, 2018 WL 2836076, at \*2-3 (N.D. Cal. June 11, 2018) (reviewing the allegations on a motion to remand to determine whether the plaintiff could state a claim against his supervisor as a "managing agent").

In *Taylor*, this Court found the plaintiff failed to establish his supervisor was a "managing agent" under California law.  Taylor sought to hold his former employer, Trees Inc., liable for discrimination, and Trees argued "a managing agent was not involved in any of the allegedly improper conduct." *Id.*, 58 F.Supp.3d at 1096, 1103.  Taylor argued his general foreman, Ronnie Colis, was a managing agent because Colis oversaw crews and foremen and had "complete discretion in running these crews, including determining an employee's ability to return to work after injury." *Id.* at 1104. The Court observed the evidence showed "Colis was the General Foreman for one of the two Trees yards in Fresno," though Trees operated in 21 states and "in other California cities, including Yuba City, Modesto, Tulare, Sacramento, Turlock, Stockton, Jamestown, Paso Robles, Sonora, and Watsonville." *Id.*  The Court found there was "insufficient evidence that the Fresno yard managed by Colis was a substantial portion of [the] business." *Id.*  Although "Colis had the ability to hire and fire, discipline, and train employees," there was "no evidence that describe[d] the nature or extent of Colis's authority." *Id.* at 1107.  The Court determined "the evidence does not indicate that Colis had substantial discretionary authority over significant aspects of Trees's business, or that Colis's decisions created corporate policy."  Thus, the Court concluded Colis was not a "managing agent" as defined by California law. *Id.*

The Northern District addressed similar facts in *Nguyen*, in which the plaintiff asserted his supervisor, Michael Wilcox, was a "managing supervisor" and sought to hold Wilcox liable for violations of wage and hour laws under Section 558.1. *Id.*, 2018 WL 2836076, at \*2-3.  Nguyen argued, "Wilcox oversaw the location where Plaintiff worked and supervised the daily work of employees." *Id.* at \*3.  Specifically, Nguyen alleged that "he reported to Wilcox, Wilcox gave Plaintiff his daily assignments, and Wilcox reviewed all hours submitted for compensation and all requests for reimbursement." *Id.* (internal quotation marks omitted).  The court found the allegations were insufficient "to show that Wilcox had substantial discretionary authority over a significant aspect

of [the] business or that Wilcox had 'broad and unlimited authority.'" *Id.* Further, the court observed there were no "allegations from which to infer that Wilcox's decisions created corporate policy." *Id.* Accordingly, the court concluded "the allegations in the complaint fail to establish that Wilcox was a 'managing agent of the employer" as required by California Labor Code section 558.1(b)." *Id.* at *2 (emphasis omitted).

Previously, the Court found the allegations were insufficient to support a conclusion that Horn is a managing agent, and they suffered from "deficiencies similar to those identified in *Taylor* and *Nguyen.*" (Doc. 35 at 9.) In so finding, the Court observed:

> [T]he facts alleged are insufficient for the Court to find Horn and Klair possessed the required "discretionary authority" over the business. Even assuming Horn and Klair instructed Plaintiffs and putative class members to prepare for shifts prior to checking in, keep radios on during rest and meal periods, and take doff equipment after clocking out, this at most shows limited supervising authority over employees' daily assignments. *See Nguyen*, 2018 WL 2836076, at *3. There are no allegations addressing "the nature or extent of" the authority vested in Horn and Klair. *See Taylor*, 58 F.Supp.3d at 1107. For example, there are no allegations addressing whether Horn and Klair had similar authority over employees at plants owned by Blue Diamond Growers outside of Stanislaus County, such that the Court could conclude the individual defendants had "substantial discretionary authority over significant aspects" of the business.

(*Id.* at 10.) Defendants contend the additional allegations in the TAC "appear[] to … convert the Court's examples into conclusory allegations without pleading any facts to back them up." (Doc. 43-1 at 19, citing Doc. 42, ¶ 21.) According to Defendants, "Without Plaintiffs' legal conclusions, Plaintiffs (sic) claims against Horn are premised on the same allegations the Court has already determined fails to support a conclusion that Horn is a 'managing agent'…" (*Id.*)

Plaintiffs now allege Horn is "a leader of Operations" at the Salida plant, and "exercises substantial independent authority and judgment in her corporate decision making so her decisions ultimately determine corporate policy." (Doc. 42 at 6-7, ¶¶ 18, 21.) Plaintiffs contend:

> Horn exercised authority in payroll and timekeeping policies. Defendant Horn hired, fired, and disciplined and employees at her discretion. Defendant Horn possesses the discretionary authority to form and make decisions regarding work committees. Defendant Horn made significant decisions affecting company policy. These decisions included policy making and enforcement of rest break and meal break policies, and overtime, the policies of which resulted in the violations alleged herein. Defendant Horn had authority over employees at plants owned by

10

Defendant Blue Diamond Growers outside of Stanislaus County.

(*Id.* at 7, ¶ 21.)  In addition, Plaintiffs assert Horn "caused the overtime violations by implementing and enforcing work schedules, including policies and practices regarding donning and doffing."  (*Id.* at 22, ¶ 88; *see also id.* at 19, ¶ 70.)  Plaintiffs contend the "additional allegations in the TAC are not legal conclusions but provide factual content regarding Defendant Denise Horn (sic) degree of discretion," including "discretionary authority to hire, fire, and discipline employees at her discretion."  (Doc. 45 at 21-22.)

To the extent Plaintiffs rely upon Horn's discretionary authority to hire, fire, and discipline other employees, such discretion is insufficient to establish her status as a "managing agent."  *See, e.g., Vermillion v. Corr. Corp. of Am.*, 2008 WL 4755329, at *12 (E.D. Cal. Oct. 29, 2008) ("supervisory status and power to hire and fire employees is insufficient to transform [an individual] into a managing agent in the absence of meaningful facts of his discretionary authority over ultimate corporate decisions"); *Haynes v. Home Depot U.S.A., Inc.*, 2020 WL 6871049, at *4 (S.D. Cal. Nov. 23, 2020) ("exercising some discretion"—including hiring and firing—"does not equate to managing agent status without additional proof that the employee's discretion affected widespread corporate policy"); *Wheeler v. Home Depot U.S.A., Inc.*, 2020 WL 12835895, at *4 (S.D. Cal. Nov. 23, 2020) ("Plaintiff attempts to argue that the district managers' discretion over staffing (i.e., hiring and firing) qualifies them as managing agents.  However, a manager's ability to hire or fire other employees alone does not equate to 'managing agent' status").  Thus, Plaintiffs must identify authority vested with Horn that affects the corporate policies of Blue Diamond Growers.

Although Plaintiffs assert Horn "made significant decisions affecting company policy," such as "making and enforcement of rest break and meal break policies, and overtime," there are no facts alleged to support these conclusions.  (*See* Doc. 42 at 7, ¶ 21.)  Indeed, while Plaintiffs previously indicated that Horn instructed Plaintiffs and other employees to prepare for shifts prior to checking in, keep radios on during rest and meal periods, and don and doff equipment off the clock, such allegations are absent from the TAC.  (*Compare with* Doc. 12 at 15, ¶ 53.)  Similarly, Plaintiffs fail to allege facts regarding what authority Horn "exercised in payroll and timekeeping polices," or identify said polices. (*See* Doc. 42 at 7, ¶ 21.)  Even where a managing supervisor reviewed employee hours submitted for

compensation and requests for reimbursement, it was insufficient to show he was a managing agent. *See Nguyen*, 2018 WL 2836076, at *2-3. Further, while Plaintiffs allege Horn has "authority over employees at plants owned by Defendant Blue Diamond Growers outside of Stanislaus County," there is no information concerning the number of plants—or employees—over which she has authority, such that the Court may conclude Horn has authority over "a substantial portion of [the] business." *See Taylor*, 58 F.Supp.3d at 1104 (finding authority over two yards in Fresno was not sufficient where the company operated in many locations).

Plaintiffs' vague allegations are insufficient to support a conclusion that Horn is vested with "broad and unlimited authority" that affects significant aspects of Blue Diamond Growers, and do not support a conclusion that Horn's decisions created or affected corporate policies. *See Taylor*, 58 F.Supp.3d at 1107; *Gonzalez*, 2020 WL 7042817, at *1-2. Because Plaintiffs fail to allege facts sufficient to support a conclusion that Horn was a "managing agent" of Blue Diamond Growers, individual liability under Section 558.1 for the alleged violations of California wage and hour law may not be invoked. Accordingly, dismissal is appropriate for all claims as raised against Horn.

## B.      First Claim for Relief:  Violation of the FLSA

Plaintiffs seek to hold Blue Diamond Growers liable for violating the Fair Labor Standards Act, which regulates the minimum wages paid to employees, including wages for "overtime" work. *See* 29 U.S.C. §§ 206-207; *Dent v. Cox Communs. Las Vegas, Inc.*, 502 F.3d 1141, 1143 (9th Cir. 2007). Under the FLSA, an employee who works more than forty hours a week must be paid at least one and one-half times his or her regular rate for the additional hours. 29 U.S.C. § 207(a)(1). An employer who violates Section 207 "shall be liable to the employee or employees affected in the amount of their ... unpaid overtime compensation ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

Plaintiffs allege Blue Diamond Growers "routinely require[ed] and/or suffered or permitted Plaintiffs and similarly situated employees to work more than 40 hours per week." (Doc. 42 at 15, ¶ 52.) Plaintiffs report the employees "were typically scheduled" shifts of eight or more hours per day, six to seven days per week. (*Id.*, ¶ 53.) According to Plaintiffs, this "typical schedule… resulted in Plaintiff and other similarly situated employees' typically working more than 40 hours per week

1  because of [Blue Diamond Growers'] practice of understaffing shifts and requiring employees to either

2  start early or end later than there (sic) scheduled start and stop time." (*Id.*) Plaintiffs allege:

3              Before the start of each work shift but prior to clocking in, Plaintiffs and
             other similarly situated employees typically walked into the building

4              through a hallway and donned ear plugs and hair nets and then proceed to
             walk up the stairs to where their lockers were located, walk back down

5              stairs to grab their protective eight button overcoats and button up all
             eight buttons in order to keep clothing from getting caught on machinery

6              and then clocked in for the start of the day. This resulted in substantial off
             the clock unpaid time before the start of each workday. After clocking

7              out at the end of the work shift, Plaintiffs and other similar situated
             employees regularly unbuttoned their overcoat and walked to place their

8              coat in the laundry bin to be washed. Plaintiffs and other similarly
             situated employees were not compensated for this off the clock time

9              which amounted to approximately twenty-four (24) to thirty (30) minutes
             during a six (6) day workweek.

10

11 (*Id.* at 15-16, ¶ 56.) Plaintiffs contend the "off the clock time resulted in [Blue Diamond Growers']

12 failure to pay overtime." (*Id.*) Further, Plaintiffs allege Blue Diamond Growers, "intentionally, with

13 reckless disregard for their responsibilities under the FLSA, and without good cause, failed to pay

14 Plaintiffs and similarly situated employees their proper wages," and thus acted willfully in violating the

15 FLSA. (*Id.* at 16-17, ¶ 61.)

16         Defendants argue the allegations "do not address the Court's concerns," and fail to support a

17 claim under the FLSA. (Doc. 43-1 at 11.) Specifically, Defendants observe that in addressing the

18 FAC, the Court found "Plaintiffs do not identify any specific weeks they were required to work

19 overtime, estimate the amount of overtime worked or the amount of overtime wages owed, or make any

20 allegations beyond those which mirror the elements of a claim for a violation of the FLSA.'" (*Id.*,

21 quoting Doc. 35 at 16.) Defendants contend Plaintiffs did not cure these defects, and "still have zero

22 factual information regarding any specific instance where even just one of them worked over forty

23 hours in a week and were not paid overtime." (*Id.*, emphasis omitted.) Defendants assert:

24             The only substantial factual allegations added to the TAC contain
             information regarding the personal protective equipment employees were

25             required to wear and that the donning and doffing took 24–30 minutes per
             6–7 days, which even if true (which Defendants dispute), is an average of

26             3.5–5 minutes per day, a *de minimis* amount of time, considering Plaintiffs
             included non-unique protective gear such as hair nets and ear plugs.

27

28 (*Id.* at 12.) Defendants contend that "even if true," the donning and doffing time "is not required to be

13

compensated under the FLSA." (*Id.* at 13.)  Thus, Defendants contend the overtime claim should be dismissed.  (*Id.* at 13-14.)

Plaintiffs maintain their allegations are sufficient and "the off-the-clock time is compensable because the act of placing the ear plugs and hairnets triggers the continuous workday rule." (Doc. 45 at 5-6.)  Plaintiffs assert, "Since the act of donning and doffing is integral and indispensable to the principal activities performed by Plaintiffs, the off the clock time experienced after the initial donning is therefore compensable." (*Id.* at 6; *see also id.* at 9-13.)

In *Landers v. Quality Commns., Inc.*, the Ninth Circuit addressed for the first time "the degree of specificity required to state a claim for failure to pay minimum wages or overtime wages under the FLSA" following the Supreme Court's decisions in *Twombly* and *Iqbal*.  *Id.*, 771 F.3d 638, 640 (9th Cir. 2015).  The Court noted: "Pre-*Twombly* and *Iqbal*, a complaint under the FLSA for minimum wages or overtime wages merely had to allege that the employer failed to pay the employee minimum wages or overtime wages." *Id.*, 771 F.3d at 641.  However, the Ninth Circuit observed that with *Twombly* and *Iqbal*, the Supreme Court clarified plaintiffs must allege facts sufficient to "state[] a plausible claim for relief." *Landers*, 771 F.3d at 641.  Therefore, the Ninth Circuit determined in *Landers* that "to survive a motion to dismiss, a plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." *Id.* at 644-45, citing *Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012), *Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013); *Davis v. Abington Memorial Hospital*, 765 F.3d 236, 242-43 (3d Cir. 2014).  The Ninth Circuit explained:

> [T]he plausibility of a claim is "context-specific." *Lundy*, 711 F.3d at 114. A plaintiff may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility. *See Pruell*, 678 F.3d at 14.  Obviously, with the pleading of more specific facts, the closer the complaint moves toward plausibility.  However, like the other circuit courts that have ruled before us, we decline to make the approximation of overtime hours the *sine qua non* of plausibility for claims brought under the FLSA.

*Landers*, 771 F.3d at 645.  Accordingly, generalized allegations of FLSA violations will not suffice.

14

*Id.* at 645-66.

Having determined the applicable standards following *Twombly* and *Iqbal*, the Ninth Circuit evaluated whether Landers alleged facts sufficient to support his claims under the FLSA.  Landers alleged his employer "implemented a '*de facto* piecework no overtime' system and/or failed to pay … overtime wages for the hours worked by Landers," which resulted in "the plaintiffs not being paid time and one-half their 'regular hourly rate' for work in excess of 40 hours a week."  *Landers*, 771 F.3d at 645-646.  Further, Landers asserted he "worked more than 40 hours per week for the defendants, and the defendants willfully failed to make said overtime and/or minimum wage payments."  *Id.* at 646.  The Ninth Circuit found that Landers's "allegations 'raise the possibility' of undercompensation in violation of the FLSA, [but] a possibility is not the same as plausibility."  *Id.*  The Court observed: "Notably absent from the allegations in Landers's complaint … was any detail regarding a given workweek when Landers worked in excess of forty hours and was not paid overtime for that given workweek and/or was not paid minimum wages."  *Id.*  The Court explained that although FLSA plaintiffs "cannot be expected to allege 'with mathematical precision,' the amount of overtime compensation owed by the employer, they should be able to allege facts demonstrating there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages."  *Id.* (citation omitted).  Therefore, the Court concluded Landers failed to allege facts sufficient to support a claim for violation of the FLSA.  *Id.*

Following *Landers*, courts repeatedly found allegations corresponding to the elements for an FLSA claim could not withstand a motion to dismiss.  *See, e.g., Tan v. GrubHub, Inc.,* 171 F. Supp. 3d 998, 1007-08 (N.D Cal. 2016) ("*Landers* clarifies that mere conclusory allegations that class members 'regularly' or 'regularly and consistently' worked more than 40 hours per week—without any further detail—fall short of *Twombly/Iqbal*"); *Shann v. Durham Sch. Servs., L.P.*, 182 F.Supp.3d 1044, 1047 (C.D. Cal. 2016) (finding the plaintiffs failed to "allege a single workweek where they worked in excess of forty hours and were not paid for the excess of hours in that workweek," and this deficiency "plainly subjects [the] claim to dismissal"); *Nye v. Burberry Ltd.*, 2016 (D. Nev.  Oct. 21, 2016) ("an employee's conclusory allegation that she 'routinely' worked more than forty hours per week did not meet the pleading standard" [citation omitted]); *Perez v. DNC Parks & Resorts at Sequoia*, 2020 WL

1   4344911 at * 8 (E.D. Cal. July 29, 2020) (finding similar allegations insufficient under the FLSA).

2          For example, in *Perez*, the plaintiffs alleged they suffered minimum wage and overtime wage

3   violations under the FLSA because they:

4              (1) were interrupted during their breaks, (2) were paid for less than the
               overtime hours actually worked, (3) were not provided with premium
5              payments for all meal and rest periods that defendants forced them to
               miss, (4) had their time records improperly adjusted to reflect meal breaks
6              that were not actually taken, (5) were required to finish their allotted work
               even after clocking out for the day, and (6) did not have the value of
7              certain fringe benefits factored into the calculation of their rate of pay for
               overtime hours.

8

9   *Perez*, 2020 WL 4344911 at * 8.  The Court observed the *Perez* plaintiffs did not "identify a single

10  workweek where they were not paid the … overtime pay for any hours worked in excess of eight

11  hours in one workday and forty hours in any one workweek."  *Id.*  The Court noted that though one

12  plaintiff alleged she "often works 48 hours per week over 6 days, but ... is only paid for 43 to 45 hours

13  for those weeks," she did not allege "what constitutes 'often' and whether it even represents the

14  'average workweek during the applicable period.'"  *Id.*, quoting *Landers*, 771 F.3d at 645.  Further, the

15  Court noted the plaintiffs did not identify the average rates at which they were paid or estimate the

16  amount of overtime wages owed.  *Id.*  Accordingly, the Court found dismissal of the overtime claim

17  was appropriate.  *Id.*

18         Plaintiffs allege Blue Diamond Growers "routinely" required Plaintiffs "to work more than 40

19  hours per week" and they "were not paid overtime premium wages for *all* hours worked in excess of 4

20  hours per week."  (Doc. 42 at 15, ¶¶ 52-53, *see also id.* at 16, ¶ 58 (alleging Blue Diamond Growers

21  "failed and refused to pay *all* overtime premiums") [emphasis added].)  However, *Landers* established

22  a plaintiff's allegation that overtime violations occurred "routinely" is not sufficient to establish the

23  plausibility of a claim.  *See Tan,* 171 F. Supp. 3d at 1007-1008.  The allegations clearly indicate

24  Plaintiffs received overtime compensation, but Plaintiffs believe they were not paid for "all" their

25  overtime.  While Plaintiffs contend they were required to don and doff protective gear without

26  compensation— and "[t]his off the clock time resulted in … failure to pay overtime" (*id.* at 16, ¶ 56)

27  — Plaintiffs again to identify their hourly pay, estimate wages paid or owed, or specify any weeks

28  they were required to work overtime without proper pay.  Without such information, the allegations

16

are insufficient to support the conclusion that the overtime pay Plaintiffs received fell below the mandated "one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek" if the alleged donning and doffing time was added.  Thus, the TAC continues to suffer deficiencies similar to those identified in *Landers, Tan*, and *Perez*; and Plaintiffs fail to state a plausible claim for a violation of the FLSA.  *See Landers*, 771 F.3d at 646 (allegations that only "raise the possibility of undercompensation" are insufficient); *Tan,* 171 F. Supp. 3d at 1007-08; *Perez*, 2020 WL 4344911 at *8.  Therefore, the motion to dismiss the claim for a violation of the FLSA is granted.

## C.    Second Claim for Relief:  Minimum Wage

Plaintiffs seek to hold Defendants liable for failure to pay minimum wages and statutory wage penalties in violation of Cal. Lab. Code §§ 1197, 1194(a), & 1194.2.  (Doc. 42 at 17-20, ¶¶ 67-76.) Under Section 1197, "[t]he minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful."  Cal. Lab. Code § 1197.  If an employer fails to pay its employees the minimum wage, Section 1194 provides that "any employee receiving less than the legal minimum wage … is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage."  Cal. Lab. Code § 1194.  If Plaintiffs and other class members were not paid minimum wages, then they are entitled to payment of the full amount of the unpaid minimum wage. *Id.*

Plaintiffs contend Blue Diamond Growers "failed to pay Plaintiffs and the Class the minimum wage for all hours worked."  (Doc. 42 at 17, ¶ 68.)  They assert that "Plaintiffs and the Class were routinely required to work prior to their scheduled shifts, during their meal periods when they were authorized and permitted and after their scheduled shifts, without compensation."  (*Id.* at 18, ¶ 69) Specifically, Plaintiffs allege:

> Before the start of each work shift but prior to clocking in, Plaintiffs and other similarly situated employees typically walked into the building through a hallway and donned ear plugs and hair nets and then proceed to walk up the stairs to where their lockers were located, walk back downstairs to grab their protective overcoats with eight buttons and button up all eight buttons in order to keep clothing from getting caught on machinery and then clocked in for the start of the day. This resulted in daily substantial off the clock unpaid time before the start of each workday. After clocking out at the end of the work shift, Plaintiffs and other similar situated employees regularly unbuttoned their protective overcoats with eight buttons and walked to place their coat in the laundry bin to be washed. Plaintiffs and other similarly situated employees were

17

> not compensated for this off the clock time which amounted to approximately twenty-four (24) to thirty (30) minutes during a six (6) day workweek. This off the clock time resulted in … failure to pay overtime. The off the clock time spent amounts in aggregate to a substantial claim that [Blue Diamond Growers] failed to Plaintiffs and the Class the minimum wage for all hours worked.

(*Id.* at 17-18, ¶ 68, emphasis omitted.)

Defendants argue the allegations are conclusory and "threadbare recitals that Defendants failed to pay minimum wage." (Doc. 43-1 at 14.)  Defendants observe that in addressing the minimum wage claim in the First Amended Complaint, "the Court specifically noted that 'Plaintiffs also did not allege information regarding their hourly pay rates, such that the Court may determine the identified tasks would cause their hourly pay to fall below the mandated minimum wage.'" (*Id.*, quoting Doc. 35 at 19.)  Defendants assert that Plaintiffs "ignored the direct guidance from the Court and failed to allege any information regarding their hourly pay rates to allow the Court to determine if their alleged off-the-clock work could plausibly cause their hourly pay to fall below the minimum wage." (*Id.*)  Thus, Defendants conclude the claim "suffers from … fatal deficiencies" and should be dismissed.  (*Id.*)

Plaintiffs maintain they "sufficiently plead facts to state minimum wage… violation claims." (Doc. 45 at 16, emphasis omitted.)  Plaintiffs note that under *Landers*, they are required to "plead facts demonstrating at least one workweek when [they were] not paid minimum wage to state a plausible claim," and assert "[t]his is a fairly easy standard to meet." (*Id.*, citing *Landers*, 771 F.3d at 647.)  Plaintiffs contend they satisfied this requirement, because they "provided allegations addressing their start and end dates of employment, their work schedules, and the off the clock time they experienced daily." (*Id.* at 18.)

As Plaintiffs acknowledge, though *Landers* addressed FLSA claims, federal courts determined the pleading standards identified extend to claims under the California Labor Code.  *See, e.g., Shann v. Durham Sch. Servs., L.P.*, 182 F.Supp.3d 1044 (S.D. Cal. 2016) ("[t]he pleading standards set forth in *Landers* apply equally" to a plaintiff's claims for overtime and minimum wage violations under state law; *Tan v. GrubHub, Inc.*, 171 F.Supp.3d 998, 1006 (N.D. Cal. 2016); ("Although *Landers* discussed FLSA claims, its reasoning applies to California Labor Code claims as well"); *Krauss v. Wal-Mart, Inc.*, 2019 WL 6170770 at *3 (E.D. Cal. Nov. 19, 2019) (finding the plaintiff failed to allege facts

sufficient to support a claim for minimum wage violations under California law with "generalized allegations" and she did not allege facts sufficient to conclude she was paid less than minimum wage during any given week).  Plaintiffs are required to do more than present conclusory statements that they, and class members, were paid less than minimum wage in violation of California law.  This burden may be met with allegations addressing as the hourly wages paid and the amount of off-the-clock work required.  *See, e.g., Hines v. Constellis Integrated Risk Mgt.*, 2021 WL 4432833 (C.D. Cal. Aug. 24, 2021); *Dawson v. One Call Med.*, 2021 WL 5513516 (S.D. Cal. Sept. 21, 2021).

For example, in *Dawson*, the court found the allegations sufficient to conclude the plaintiff "was paid less than the minimum wage while an employee," though the claim for minimum wage violations was dismissed on other grounds.  *Id.*, 2021 WL 5513516 at *1, *4.  Dawson alleged he was paid "an hourly wage of $10.00, but only after the first hour of waiting, which wasn't compensated."  *Id.*, 2021 WL 5513516 at *1.  The court observed that "$10.00 was the minimum wage in both Los Angeles and California as a whole" during the applicable period.  *Id.* at *4.  The court explained that because Dawson alleged "he wasn't paid *any* wage for the first hour of work spent waiting," once the hour was added to the time that should be compensated, it brought "his average hourly wage below the $10.00 per hour he was paid for subsequent hours."  *Id.*  Thus, the court concluded Dawson "sufficiently alleges that his compensation was below the minimum wage."  *Id.*

On the other hand, the court determined in *Hines* that the plaintiff failed to allege facts sufficient to support a conclusion that he was paid below minimum wage.  *Id.*, 2021 WL 4432833. Hines alleged the defendants "did not pay him a minimum wage for all of the time that he worked because Defendants allegedly did not permit employees to clock-in for pre– and post-shift activities," including "donning and doffing [a] uniform."  *Id.* at *4.  Hines also alleged "on information and belief[,] that on February 11, 2019, Defendants failed to compensate him for at least the minimum wage."  *Id.*  However, the Court found Hines' assertion that "Defendants allegedly failed to pay him the minimum wage, … [was] not supported by any evidentiary facts."  *Id.*  Further, the court observed that while Hines alleged he was not permitted to record time for donning and doffing, Hines did not "allege any details about the purported detrimental rounding policy that would demonstrate that his hourly rate of $28.76 fell below the minimum wage" due to the unrecorded time.  *Id.* Accordingly, the court

granted the motion to dismiss Hines' claim for minimum wage violations.  *Id.* at *5.

As in *Hines*, Plaintiffs allege they were required to perform uncompensated tasks that included donning and doffing equipment before and after work. (Doc. 12 at 15, ¶ 53.)  Although Plaintiffs estimated they took 24 to 30 minutes total each week on such tasks, Plaintiffs again failed to provide any information regarding their hourly pay rates, such that the Court may determine the identified tasks caused their hourly pay to fall below the mandated minimum wage.  The allegations remain insufficient to support a conclusion that Plaintiffs were paid less than the minimum wage in violation of California law.  *See Dawson,* 2021 WL 5513516, at *4-5; *Boyack v. Regis Corp.,* 812 Fed. App'x 428, 430-31 (9th Cir. 2020) (affirming dismissal where the plaintiff failed to include factual allegations supporting a conclusion that she "received less than minimum wages for all hours worked").  Consequently, the motion to dismiss the claim for minimum wage violations is granted.[3]

**D.     Third Claim for Relief: Overtime Wages under California law**

Plaintiffs also seek to hold Blue Diamond Growers liable for failure to pay overtime wages in violation of state law, as provided in Cal. Lab. Code § 510 and Industrial Welfare Commission Wage Order 8.[4]  (Doc. 42 at 20-23.)  Section 510 governs what constitutes overtime hours, and what rate of pay applies to various tiers of overtime work.  In relevant part, Section 510(a) provides:

> Eight hours of labor constitutes a day's work.  Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one–half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

Cal. Lab. Code § 510(a).  Wage Order 8 "mirrors" the Labor Code provisions concerning overtime

---

[3] Defendants also contend Plaintiffs are unable to state a claim for minimum wage violations because "all Plaintiffs all made between $16.55 and $19.85 per hour since 2017, well in excess of the minimum wage at all times."  (Doc. 43-1 at 14, n.3.)  However, these allegations are neither present in the TAC nor subject to judicial notice.  The Court declines to find Plaintiffs are unable to state a claim for minimum wage violations based upon the representations of Defendants in the motion.  However, the Court cautions Plaintiffs to comply with Rule 11. *See Perez v. DNC Parks. & Resorts at Asilomar, Inc.*, 2022 WL 411422, at *2 (E.D. Cal. Feb. 9, 2022) ("the court will not turn a blind eye to claims brought baselessly if it later comes to light that such allegations were facially untenable given the evidence already available to the parties").

[4] California's Industrial Welfare Commission Wage Order 8-2001, 8 C.C.R. § 11080 ("Wage Order 8"), "applies broadly to industries handling products after harvest."  *Perez v. Leprino Foods Co.*, 2021 WL 53068, at *4 (E.D. Cal. Jan. 6, 2021). Wage Order 8 is "to be accorded the same dignity as statutes" under California law.  *Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1027 (2012).

hours.  *Cal. Dairies, Inc. v. RSUI Indem. Co.*, 617 F.Supp.3d 1023, 1041 (E.D. Cal. 2009); *see also* 8 C.C.R. § 11080.

Plaintiffs allege Blue Diamond Growers "violated California Labor Code § 510 and IWC Wage Order 8 by failing to pay overtime to employees who were required to either work (a) more than 8 hours in one workday, (b) 40 hours in one work week, and/or (c) on the seventh (7th) consecutive day of work in a workweek."  (Doc. 42 at 21, ¶ 83.)  Plaintiffs reiterate they were required to don and doff the protective gear, and contend "[t]his off the clock time resulted in … failure to pay overtime."  (*Id.*, at 22 ¶ 87.)  According to Plaintiffs, during the "busy season," they were required to work six or seven days per week, and "[o]n several occasions employees in all three shifts were required to either start early or end later than there scheduled start and stop time due to [Blue Diamond Grower's] practice of under staffing each shift."  (*Id.* at 21, ¶ 83.)  Plaintiffs assert they, and other employees, were required to work more than 40 hours per week "without overtime premium wages for all hours worked over 40 in a [work week]."  (*Id.*)  They contend that when required to work on the seventh consecutive day, they were not paid at one and one-half their regular rate of pay for the first 8 hours of work or double their rate "for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek."  (*Id.*)

Significantly, allegations in the TAC do little more than mirror the provisions of Cal. Lab. Code § 510(a).  As discussed above, a plaintiff must do more than allege employees "'regularly' or 'regularly and consistently' worked more than 40 hours per week—without any further detail."  *Tan*, 171 F.Supp.3d at 1007 (citing *Landers*, 771 F.3d at 646).  For example, this Court determined plaintiffs alleged facts sufficient to support a claim an overtime claim under California law where the allegations included "their hours and regular shifts."  *Morrelli v. Corizon Health, Inc.*, 2019 WL 918210, at *6 (E.D. Cal. Feb. 25, 2019).  The *Morelli* plaintiffs alleged "their routine work shifts were 12 hours," and "they worked three 12-hour shifts every week without *any* overtime compensation for shifts exceeding 8 hours for the duration of their employment."  *Id.* (emphasis in original).  The Court observed these details were "clearly missing" in *Landers*.  *Id.*

On the other hand, the Central District determined a plaintiff did not allege facts sufficient to state a plausible claim where the allegations—which included limited information concerning shifts—

1    were "conclusory." *De Dios v. Gerard Roof Prods., LLC*, 2018 WL 6016952 (C.D. Cal. Sept. 4, 2018).

2    In *De Dios*, the plaintiff alleged "Defendants required Plaintiff and Class Members to work in excess of

3    8 hours in a day, in excess of 12 hours in a day and/or in excess of 40 hours in a week or for a seventh

4    day in a workweek without paying … proper overtime wages for their work." *Id.* at *3. The plaintiff

5    also alleged "Defendants failed to properly pay Plaintiff and class members for all overtime hours

6    worked because of Defendants' improper regular rate of pay calculations." *Id.*  Further, the plaintiff

7    asserted he "frequently" worked through lunch and on weekends to catch up with work orders, without

8    compensation. *Id.* at *4.  However, the court found these allegations insufficient to support the

9    conclusion that the plaintiff "was entitled to—and denied—overtime wages on these occasions." *Id.*

10   The court observed that the plaintiff did not identify his hourly pay rate, the hours worked, or estimate

11   the amounts owed.  *Id.* The Central District found these were "the type of generalized allegations that

12   the Ninth Circuit held impermissible in *Landers*." *Id.* Therefore, the plaintiff's overtime claim under

13   California law was dismissed. *Id.*

14          Similarly, this Court found a claim for overtime wages was not plausible where the plaintiff

15   alleged "[she] and others worked overtime," and off-the-clock work was "regularly required." *Tavares*

16   *v. Cargill Inc.*, 2019 WL 2918061, at *3-4 (E.D. Cal. July 8, 2019).  Tavares alleged "[she] and other

17   class members worked over eight hours in a day and/or forty hours in a week during their employment

18   with defendants." *Id.* at *1 (internal quotation marks omitted).  Tavares also asserted they "were

19   regularly required to perform unpaid work before clocking in and after clocking out for each shift due

20   to time spent donning and doffing necessary uniforms and equipment." *Id.*  However, Tavares did not

21   allege "the typical work schedule or the approximate number of hours worked during any given

22   period." *Id.* at *4.  As a result, the Court found that, even considering the allegations of off-the-clock

23   donning and doffing, the claim failed because Tavares did not allege facts supporting a conclusion that

24   the donning and doffing time should have been compensated as *overtime*.  *Id.*  Therefore, the Court

25   dismissed Tavares' overtime claim under Section 510 with leave to amend.  *Id.* at *4, *12.

26          Plaintiffs' claim for overtime under California law suffers the same deficiencies as those

27   identified in *De Dios* and *Tavares*.  Plaintiffs did not allege any facts to support a conclusion that the

28   time donning and doffing resulted in employees being owed *overtime* wages, or that the overtime

                                                     22

wages received were made insufficient.  The allegations in the TAC continue to do little more than mirror the provisions of Cal. Lab. Code § 510(a), including the limited information regarding shifts worked by Plaintiffs.  Indeed, Plaintiffs assert Blue Diamond Growers violated Section 510 because employees could be required to work more than 8 hours in a day, 40 hours in a week, *and/or* 7 consecutive days without proper pay.  However, none of the Plaintiffs identify any given day they worked more than 8 hours, any week in which they worked more than 40 hours, or even any week during the unidentified "busy season" they worked 7 consecutive days.  Further, Plaintiffs do not provide any information concerning the wages paid—such as their hourly wages or the wages received for overtime hours worked—such that the Court may determine that the overtime pay received was insufficient under Section 510.  Because the facts alleged are insufficient to state a plausible claim, the motion to dismiss the overtime claim arising under California law is granted.

### E.     Fourth Claim for Relief: Rest Periods

California law requires "employers to afford their nonexempt employees … rest periods during the workday."  *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1018 (2012).  Pursuant to Cal. Labor Code § 226.7(b): "No employer shall require any employee to work during any … rest period mandated by an applicable order of the Industrial Welfare Commission...."  In relevant part, Wage Order 8 provides:

> Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof.  However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

8 Cal. Code Regs. § 11080(12)(A).  If an employer fails to comply with these provisions, "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."  Cal. Labor Code § 226.7(c).  Thus, if an "employers forces [an] the employee to miss a required rest break or does not provide the employee with a required rest break, then the employee is entitled to be paid immediately for the missed rest break."  *Gomez v. J. Jacobo Farm Labor Contr., Inc.*, 334 F.R.D. 234, 257 (E.D. Cal. Nov. 5, 2019)

(addressing an identical rest period provision in Wage Order 14).

Notably, "an employer may so burden the use of employees' break time that employees must be considered 'on duty.'" *Rodriguez v. Taco Bell Corp*., 896 F.3d 952, 956 (9th Cir. 2018). For example, the California Supreme Court explained "on-call rest periods do not satisfy an employer's obligation to relieve employees of all work-related duties and employer control." *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 270 (2016). In *Augustus*, the court noted: "state law prohibits on-duty and on-call rest periods. During required rest periods, employers must relieve their employees of all duties and relinquish any control over how employees spend their break time." *Id.* at 260. Thus, a policy requiring employees "to keep their radios and pagers on" and "respond when needs arise" during rest periods may not comply with the requirements of Cal. Lab. Code § 226.7 and the applicable wage orders. *Id.* at 271-272.

Plaintiffs allege "Defendants required that Plaintiffs and the Class wear radios in the 'on' position at all times, including during rest periods." (Doc. 42 at 24, ¶ 98.) As a result, Plaintiffs contend "[they] and the Class were not relieved of all duties during their rest periods and were required to respond to calls on the radio during their rest period." (*Id.*) According to Plaintiffs, they and other employees "were frequently interrupted during their rest breaks to handle issues with machinery." (*Id.*) Plaintiffs assert that "[i]n other instances, Plaintiffs and the Class simply were not afforded the opportunity to take rest periods." (*Id.*) Plaintiffs allege they "did not voluntarily or willfully waive rest periods", and they "were never compensated with premium wages" for the interrupted or missed rest periods. (*Id.*, ¶¶ 97- 98.)

Defendants argue the allegations related to this claim remain insufficient. (Doc. 43-1 at 15.) Defendants observe that in addressing the FAC the Court indicated "[t]hough Plaintiffs allege Blue Diamond Growers required employees—including Plaintiffs—to 'wear radios in the 'on' position at all times, including during rest periods,' Plaintiffs do not allege their radios were, in fact, kept on at all times nor do they identify any instances when they responded to radio calls during their rest periods." (*Id.*, quoting Doc. 35 at 25.) Defendants observe that in the TAC, Plaintiffs "again fail[] to identify any specific instance when [they] kept their radios on or responded to radio calls during a rest period." (*Id.*) Defendants also note that "none of the three Plaintiffs identify a specific instance where they

1   were deprived of a rest break." (*Id.*)  Thus, Defendants contend the rest period claim should be

2   dismissed for failure to allege sufficient facts.  (*Id.*)

3          Plaintiffs argue they "sufficiently plead facts to state … rest period violation claims." (Doc. 17

4   at 18, emphasis omitted.)  Plaintiffs note that in *Sherman v. Schneider Nat'l Carriers, Inc*., the Central

5   District granted the motion to dismiss because the "allegations fall short of alleging that Defendant

6   required employees to respond to its calls during their breaks, and that they did in fact remain on call

7   pursuant to such a requirement." (*Id.*, quoting *Sherman*, 2019 WL 3220585, at *3-*4 (C.D. Cal. Mar.

8   6, 2019).)  Plaintiffs observe that in *Sherman*, the "[p]laintiff was employed as a truck driver," and the

9   Central District found it "plausible that he took meal and rest breaks at different times and that

10  Defendant would not know when exactly those breaks were on any given day." (*Id.*, quoting *Sherman*,

11  2019 WL 3220585, at *4.)  Plaintiffs argue the matter before the Court "is distinguishable [from

12  *Sherman*] as Plaintiffs generally took meal and rest breaks at the same time." (*Id.* at 19.)  Further,

13  Plaintiffs contend "Defendants in this case knew when Plaintiffs were on … rest periods because

14  Defendants scheduled … [the] rest periods for the morning, afternoon, and night shifts." (*Id.*)

15  According to Plaintiffs, "given the nature of a food processing plant, it is highly unlikely that a machine

16  never malfunction during the relevant time period." (*Id.*) Plaintiffs maintain that any time rest periods

17  were interrupted "because of machine malfunctions or responding to calls on the radio during the

18  relevant time period,… rest break[] violations were triggered, and Defendants are liable for such." (*Id.*)

19         Importantly, as the Court previously explained, "[t]o successfully state a … rest break claim,

20  plaintiffs must allege facts specifically identifying an instance where they were deprived" of the rest

21  break. *Perez*, 2020 WL 4344911, at * 8; *see also Boyack v. Regis Corp*., 812 Fed. Appx. 428 (9th Cir.

22  May 4, 2020) (holding a rest break claim fell short of the *Landers'* requirements by not "demonstrating

23  at least one workweek in which [the plaintiffs] were personally deprived of rest breaks"); *Parsittie v.

24  Schneider Logistics, Inc.*, 2019 WL 8163645, at *6 (C.D. Cal. Oct. 29, 2019) (dismissing claims as

25  insufficiently plead and noting "the Ninth Circuit requires a plaintiff to allege actual *dates* of

26  occurrences of any purported break violations, or at least allege *one* workweek with missed meal or rest

27  breaks") (emphasis in original).  Thus, even an allegation that an employer had a policy requiring

28  individuals "to be on call" during rest breaks—without more—is insufficient.  *See, e.g., Sherman v.*

1   *Schneider Nat'l Carriers, Inc.*, 2019 WL 3220585, at *3-4 (N.D. Cal. Mar. 6, 2019); *Wright v. Frontier*

2   *Mgmt. LLC*, 2021 WL 2210739, at *2-3 (E.D. Cal. May 28, 2021).

3        For example, this Court determined in *Wright* that the plaintiffs failed to allege facts sufficient

4   to support their claims for rest and meal break violations based upon an alleged policy requiring

5   employees to be "on call" during their breaks. *Id.*, 2021 WL 2210739, at *2-3. The *Wright* plaintiffs

6   asserted the defendants had a "policy requiring employees to have communications devices on them at

7   all time." *Id.* In addition, the plaintiffs asserted the defendants "require [them] to respond to calls []

8   regardless of whether they are taking a meal or rest break." *Id.* at *2 (modifications in original). The

9   Court declined to infer from this alleged policy that the plaintiffs, personally, "were interrupted and

10  asked to work during their off-duty meal and rest breaks." *Id.* Without additional allegations, the

11  Court concluded the "meal and rest break allegations fall short of plausibility." *Id.*

12       Likewise, in *Sherman*, the plaintiff asserted his employer "had a policy of requiring its

13  employees to be on call during meal and rest breaks." *Id.*, 2019 WL 3220585, at *4. Sherman

14  asserted the defendant called employees, including him, "throughout the day, including during meal

15  and rest periods … [and] required employees to respond as soon as possible." *Id.* The court observed

16  Sherman did not allege he "did in fact stay on call during those times," or that defendant was aware

17  when Sherman was on a break when calling. *Id.* The court concluded Sherman's allegations were

18  insufficient "to establish a plausible claim," and dismissed the meal and rest break claims with leave to

19  amend. *Id.* at *4, *6.

20       Although Plaintiffs contend their allegations should be distinguished from *Sherman*, their

21  additional information concerning rest breaks— including that "Plaintiffs generally took meal and rest

22  breaks at the same time"— was raised for the first time in the opposition. (*See* Doc. 45 at 18-19.) In

23  addition, allegations concerning Defendants scheduling their rest breaks were not made in the TAC.

24  The Court is unable to consider these allegations to determine the viability of Plaintiffs' claims. *See*

25  *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir.1998) (finding "new allegations"

26  raised in opposition to a motion to dismiss were irrelevant because "[i]n determining the propriety of a

27  Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint…") (emphasis in original);

28  *Campos v. Fresno Deputy Sheriff's Assoc.* 441 F. Supp. 3d 945, 959 (E.D. Cal. 2020) ("A court may

not look beyond the complaint to a plaintiff's memorandum in opposition to a defendant's motion to dismiss").  Nevertheless, it does not appear this minimal information would cure the pleading defects.

Plaintiffs' allegations continue to suffer deficiencies similar to those identified in *Sherman* and *Wright*.  Plaintiffs have only added allegations that rest break interruptions may be made "to handle issues with machinery." (*Compare* Doc. 12 at 18-19, ¶¶ 71-100 *with* Doc. 42 at 23-24, ¶¶ 92-100.) However, Plaintiffs neither allege they kept their assigned radios on at all times, nor identify any instances when they responded to radio calls during their rest periods.  For example, Barajas does not allege he had his radio on during a rest break, heard a call to address a machinery issue, and terminated his rest break early to address the issue.  Similar allegations are missing for Vargas and Vizcaino. Thus, the facts as alleged are insufficient to state a plausible claim that Plaintiffs, or Class Members, suffered rest break violations.  *See Wright*, 2021 WL 2210739, at *2-3; *Sherman*, 2019 WL 3220585, at *3-4; *see also Chavez v. RSCR Cal., Inc.*, 2019 WL 1367812, at *2 (E.D. Cal. Mar. 26, 2019) ("failure to plead at least one occasion on which [the plaintiff] was impeded from taking a … rest break likely runs afoul of the Ninth Circuit's decision in *Landers*").  Accordingly, Defendants' motion to dismiss the fourth claim for relief is granted.

**F.      Fifth Claim for Relief: Meal Periods**

Plaintiffs also seek to hold Defendants liable for failure to provide meal periods pursuant to Cal. Lab. Code §§ 226.7 and 512 and Wage Order 8 (Doc. 12 at 25-27), which require employers to provide non-exempt employees with an uninterrupted meal period of at least thirty minutes for each work period of five hours, and two meal periods for each period of ten hours.  *See* Cal. Lab. Code § 512; 8 Cal. Code Regs. § 11080(11).  Wage Order 8 explains: "Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked."  8 Cal. Code Regs. § 11080(11)(C). "[E]mployers fulfill their obligation to provide meal periods to their employees when they relieve their employees of all duty, relinquish control over their activities and permit them a reasonable opportunity to take an uninterrupted 30-minute break, and do not impede or discourage them from doing so."  *Rodriguez,* 896 F.3d at 956 (internal quotation marks, citation omitted).  For each workday an employer fails to provide such meal periods, the employer must pay "one additional hour of pay at the employee's regular rate of

27

1   compensation for each workday that the meal [period]… is not provided."  Cal. Lab. Code § 226.7.

2        Plaintiffs allege that "[they] and other similarly situated employees were required to keep their

3   radios on during meal periods in case of any malfunctions" and "were routinely required to work during

4   their meal periods due to malfunctions or were interrupted."  (Doc 42 at 26, ¶¶ 106-107.)  They assert

5   that "during meal periods Plaintiff Luis [Barajas] and similarly situated employees, were required to

6   monitor their work radio in case of malfunctions and other work-related issues."  (*Id.* at 27, ¶ 109.)

7   According to Plaintiffs, "employees did not receive meal periods of 30 uninterrupted minutes due to

8   issues with the machinery, walking to the timekeeping system and placing the required protective gear

9   before the net 30-minute meal period ended and because of [the] practice of understaffing shifts."  (*Id.*,

10  ¶ 106.)  Further, Plaintiffs contend:

11
12
13

> Following meal periods, Plaintiffs and other similarly situated employees
> walked up the stairs to access the timekeeping system and put on the
> required protective gear before the net 30-minute meal period ended in
> order to clock in on time. Walking and removing the protective gear
> before clocking in after meal periods resulted in meal periods being
> illegally short on a daily basis during each meal period for the workweek.

14

15  (*Id.* at 27, ¶ 110.)  In addition, Plaintiffs allege they "were not compensated for late, missed, or

16  interrupted meal periods."  (*Id.* at 26, ¶ 106.)

17       Defendants contend the allegations in the TAC remain insufficient to state a claim for meal

18  period violations.  (Doc. 43-1 at 16-17.)  Defendants argue that "there are no allegations identifying

19  any instance where even one of the Plaintiffs experienced a meal period violation."  (*Id.* at 16.)

20  Defendants assert: "At most, Plaintiffs vaguely allege that Plaintiff Luis Barajas (not the other two

21  named Plaintiffs) and similarly situated employees 'were required to monitor their work radio,' … but

22  does not provide any further details such as a specific time Plaintiff Barajas monitored the radio or

23  whether it resulted in a meal period violation."  (*Id.* citation omitted.)  According to Defendants,

24  "Plaintiffs' claim should be dismissed for this reason alone."  (*Id.*, citing Doc. 35 at 26; *Perez*, 2020

25  WL 4344911, at * 8.)

26       Importantly, the allegation alone that a plaintiff was required to remain "on call" during meal

27  breaks is "conclusory and devoid of any factual detail" that would support a plausible claim.  *Wyland v.*

28  *Berry Petroleum Company, LLC*,  2019 WL 1047493, at *7 (E.D. Cal. Mar. 5, 2019).  Further, this

Court recently determined allegations that breaks "were cut short because Plaintiff and Class Members were required to wear protective gear, which they had to take off and put on during their breaks, cutting into the time they were allowed to take" were insufficient, because there were no details concerning a specific company policy which mandated such activity. *Phong v. Winco Holdings, Inc.*, 2022 WL 3636369, at *6-7 (E.D. Cal. Aug. 23, 2022). For example, Plaintiffs do not allege a supervisor instructed them to put on the protective gear *during* their meal breaks, that it was a company-wide policy, or they risked of penalty for failing to comply. *See Dawson v. Hitco Carbon Composites, Inc.*, 2017 WL 7806358, at *2-3 (C.D. Cal. May 5, 2017) (finding allegations were insufficient where the plaintiff alleged the "Defendant required Plaintiff and other class members to perform certain job duties which may have resulted in missed or shortened meal[s]" but the allegations fell short of indicating the activities were required to be done during the break or defendant actively impeded the plaintiff from taking compliant meal breaks); *Lopez v. Wendy's Int'l*, 2011 WL 6967932, at *6 (C.D. Cal. Sept. 19, 2011) ("An employer … who insists that employees complete assigned tasks does not, without more, impede, discourage, or dissuade employees from taking meal breaks and rest periods"). There also is no information related to how the alleged practice of understaffing resulted in shortened meal periods. Given the lack of factual information, the motion to dismiss the fifth claim for relief is granted.

### G.     Sixth Claim for Relief: Wages Due at Termination or Resignation

Plaintiffs seek to hold Blue Diamond Growers liable for "failure to pay all earned wages at termination or resignation," pursuant to California Labor Code Sections 201 and 202, which set deadlines for paying employees unpaid wages.[5] (Doc. 42 at 28, emphasis omitted.) Plaintiffs allege Luis Barajas was discharged on or about August 15, 2018; Maria Vargas quit on or about March 25, 2018; and Elba Vizcaino was discharged on or about March 12, 2018. (*Id.*, ¶ 117.) Plaintiffs contend they "were not paid all earned wages at the time of the end of termination or resignation." (*Id.*) According to Plaintiffs, Blue Diamond Growers' "custom, practice, and/or policy was not to pay for previously earned minimum, overtime, or unrecorded time spent under Defendant's control, at the

---

[5] Section 201 provides that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code § 201. Section 202 states "[i]f an employee ... *quits* his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter..." Cal. Lab. Code § 202 (emphasis added).

time that final wages were paid." (*Id.*) Also, Plaintiffs assert the failure to pay all wages owed was "willful conduct," such that "Plaintiffs and Class Members are entitled to 30 days' wages as a penalty under Labor Code § 203." (*Id.* at 29, ¶ 122.)

Defendants argue the claim for wages due fails because the "TAC includes no allegations concerning the dates each of the Plaintiffs received their final paychecks, the amounts of the paychecks, or even the amounts they purportedly should have received, sufficient to sustain a claim for failure to pay wages upon termination." (Doc. 43-1 at 17.) In addition, Defendants assert Plaintiffs failed to "include any facts to support the requisite element that Defendants committed a 'willful' violation under Section 203." (*Id.*, citing *Perez*, 2020 WL 4344911, at *8; *Lopez v. Aerotek, Inc.*, 2015 WL 4504691, at *2 (C.D. Cal. July 23, 2015).)

### 1. Final wages under Sections 201 and 202

Plaintiffs contend Blue Diamond Growers failed "to pay for previously earned minimum, overtime, or unrecorded time spent under Defendant's control." (Doc. 42 at 22, ¶ 117.) Thus, the claim appears to be derivative of Plaintiffs' prior claims. As discussed above, Plaintiffs did not allege facts sufficient to state plausible claims for minimum wage violations—based upon alleged unrecorded time— or overtime wages violations. These dismissed claims cannot support Plaintiffs' claim for final wages. *See, e.g., Hines*, 2021 WL 4432833, at *7 (the plaintiff failed to state a claim for wages due on termination where he did not sufficiently plead overtime or minimum wage claims); *Gomez v. Elite Labor Servs. Weeklys, Ltd.*, 2023 WL 2214172, at *7 (N.D. Cal. Feb. 24, 2023) (dismissing a claim for final wages under Sections 201 and 202 where it was derivate of the plaintiff's other claims for wages, each of which were subject to dismissal); *Morelli v. Corizon Health Inc.*, 2018 WL 6201950, at *5 (E.D. Cal. Nov. 27, 2018) (dismissing a claim for final wages where it was dependent upon other causes of action—including failure to pay overtime compensation, failure to provide meal and rest breaks, and failure to pay minimum wages"—and none of the other claims were "adequately pled"). Consequently, the claim under Sections 201 and 202 is also subject to dismissal.

### 2. Penalties under Section 203

Plaintiffs seek penalties under Cal. Lab. Code § 203 for the failure to comply with the deadlines identified in Sections 201 and 202. (Doc. 42 at 28.) Where an employer willfully fails to

comply with Sections 201 and 202 upon an employee's separation, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."  Cal. Labor Code § 203(a).  "A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due." 8 Cal. Admin. Code § 13520; *see also Barnhill v. Robert Saunders & Co*., 125 Cal.App.3d 1, 7-8 (1981).

Because Plaintiffs failed to allege sufficient facts to support a claim for violations of Sections 201 and 202, the claim for waiting time penalties fails.  *See Krauss v. Wal-Mart, Inc.*, 2020 WL 1874072, at *7 (E.D. Cal. Apr. 14, 2020) (dismissing a claim for penalties under Section 203 where the underlying claims for overtime and minimum wages failed); *Reyna v. WestRock Co.*, 2020 WL 5074390, at *9 (N.D. Cal. Aug. 24, 2020) ("because Plaintiff has failed to properly allege violations of sections 201 and 202, she is not entitled to the penalties under section 203"). Accordingly, Defendants' request for dismissal of the sixth claim for relief is granted.

### H.      Seventh Claim for Relief:  Unfair Competition Law

Plaintiffs' final claim in the TAC is for a violation of California's Unfair Competition Law, as set forth in Cal. Bus. & Prof. Code § 17200, *et seq.* (Doc. 42 at 23.)  Under Section 17200, unfair competition includes any "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Therefore, there are three prongs under which a claim may be established under Section 17200.  *Daro v. Superior Court*, 151 Cal.App.4th 1079, 1093 (2007) ("a business act or practice need only meet one of the three criteria—unlawful, unfair, or fraudulent—to be considered unfair competition"); *see also Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 731 (9th Cir. 2007) ("[e]ach prong … is a separate and distinct theory of liability").  Given the disjunctive nature of the prongs, an action may be unfair even if it is not unlawful.  *Cel-Tech Comms., Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 181 (1999).

#### 1.      Unfair practices

Recently, courts observed that what constitutes "unfair" practices under the UCL is unsettled.  *See, e.g., Doe v. CVS Pharm., Inc.*, 982 F.3d 1204, 1214-15 (9th Cir 2020) (identifying various tests established to evaluate the prong); *see also Obertman v. Electrolux Home Care Prods.*, 482 F. Supp 3d

31

1017, 1027 (E.D. Cal. 2020) ("[t]here is some confusion in the law over the applicable test for 'unfair'

conduct"); *In re Zoom Video Communs. Privacy Litig.*, 535 F.Supp.3d, 1047 (N.D. Cal. 2021) ("the

proper definition of unfair conduct … is currently in flux among California courts" [internal quotation

marks omitted]).  The Ninth Circuit observed there are currently three tests for unfair practices:

> [C]ourts consider either: (1) whether the challenged conduct is "tethered to
> any underlying constitutional, statutory or regulatory provision, or that it
> threatens an incipient violation of an antitrust law, or violates the policy or
> spirit of an antitrust law," *Durell v. Sharp Healthcare*, 183 Cal. App. 4th
> 1350, 1366, 108 Cal. Rptr. 3d 682 (2010)); (2) whether the practice is
> "immoral, unethical, oppressive, unscrupulous or substantially injurious to
> consumers," *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th
> 1235, 1254, 99 Cal. Rptr. 3d 768 (2009); or (3) whether the practice's
> impact on the victim outweighs "the reasons, justifications and motives of
> the alleged wrongdoer." *Id.*

*Doe,* 982 F.3d at 1215.  Nevertheless, the "traditional test for a consumer claim" is the second

identified, which this Court consistently applies to evaluate claims for unfair practices.  *See Obertman*,

482 F. Supp. 3d at 1017.

Plaintiffs appear to rely on the traditional second test identified in *Doe*, asserting the activities

of Blue Diamond Growers "constitute unfair practices" because they "violate an established public

policy and/or the practice is immoral, unethical, oppressive, unscrupulous and substantially injurious

to Plaintiffs, the Class, the public, and other similarly situated employees."  (Doc. 42 at 32, ¶ 127.)

However, as with the TAC, Plaintiffs merely parrot the traditional test and do not allege any *facts* to

support their claim.  *Compare with McKell v. Washington Mutual, Inc.,* 142 Cal. App. 4th 1457, 1473

(2006) ("A business practice is unfair within the meaning of the UCL if it violates established public

policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which

outweighs its benefits").

Given the lack of factual allegations, Plaintiffs fail to state a claim under this prong.  *See Teton*

*Global Invs. LLC v. LC Inv. 2010,* 2021 WL 5861565, at *3 (S.D. Cal. Aug. 11, 2021) ("specific facts

must be pled to support a theory of an unfair business practice").

## 2. Fraudulent practices

A "fraudulent" act is "one which is likely to deceive the public," and "may be based on

misrepresentations … which are untrue, and also those which may be accurate on some level, but will

nonetheless tend to mislead or deceive." *McKell*, 142 Cal. App. 4th at 1474.  Thus, the word "fraudulent" under Section 17200 "does not refer to the common law tort of fraud," *Puentes v. Wells Fargo Home Mortg., Inc.,* 160 Cal. App. 4th 638, 645 (2008), but still requires allegations that the misrepresentation was directly related to injurious conduct, and that the claimant actually relied on the alleged misrepresentation.  *In re Tobacco II Cases*, 46 Cal.4th 298, 336-37 (2009).  Further, claims based upon the "fraudulent" prong are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1127 (9th Cir. 2009).

Plaintiffs assert Blue Diamond Growers "falsely den[ied] the amount or validity" of wages due and acted with an intent to defraud class members.  (Doc. 42 at 30-31, ¶ 126(d).)  However, Plaintiffs do not identify any specific misrepresentation made by Blue Diamond Growers, or assert they relied upon the misrepresentation.  The sparse allegations fail to comply with Rule 8, let alone satisfy the heightened pleading requirements of Rule 9.  Because Plaintiffs fail to plead the circumstances surrounding the alleged fraud with particularity, the UCL claim is not cognizable to the extent it is based upon the "fraudulent" acts prong.

### 3.    Unlawful practices

Plaintiffs seek to hold Blue Diamond Growers liable for "unlawful practices" under Section 17200.  (Doc. 42 at 31, ¶ 128; *see also* Doc. 45 at 23 [arguing sufficiency of the claim under "the unlawful prong"].)  The business acts proscribed under the "unlawful" prong of Section 17200 include "anything that can properly be called a business practice and that at the same time is forbidden by law." *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992) (quoting *Barquis v. Merchants Collection Assoc.*, 7 Cal.3d 94, 113 (1972)).  In essence, the UCL "borrows violations of other laws and treats them as unlawful practices independently actionable under Section 17200." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 839 (1994) (internal quotation marks, citation omitted).

"To state a claim under the unlawful prong of the UCL, a plaintiff must plead: (1) a predicate violation, and (2) an accompanying economic injury caused by the violation." *Aerojet Rocketdyne, Inc. v. Global Aero., Inc*., 2020 WL 3893395, at *6 (E.D. Cal. July 10, 2020) (citation omitted); *see also Berryman v. Merit Property Management, Inc*., 152 Cal. App. 4th 1544, 1554 (2007) ("a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong").  Predicate

violations include "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders*, 27 Cal. App. 4th at 838-39.

Plaintiffs assert they "sufficiently pled predicate claims to bring a UCL claim." (Doc. 45 at 20, emphasis omitted.) Specifically, Plaintiffs identified the following predicate violations in the TAC:

> a. violations of the FLSA, 29 U.S.C. §201, et seq. by failing to pay overtime compensation;
>
> b. violation of California Labor Code § 1194 (relating to failure to pay minimum wages);
>
> c. violation of California Labor Code § 510 (relating to the failure to compensate at the rate of no less than one and one-half times the regular rate of pay for all work in excess of eight hours in one workday and any work in excess of 40 hours in any workweek, or else the failure to compensate at the rate of no less than one and one- half times the regular rate of pay for all work in excess of ten hours in one workday and any work in excess of 6 days in any workweek);
>
> d. violation of California Labor Code § 216 by willfully refusing to pay wages due and payable by falsely denying the amount or validity thereof, or that the same is due, with intent to secure for itself any discount upon such indebtedness, and with intent to annoy, harass, oppress, hinder, delay, or defraud, the Class Members to whom such indebtedness is due;
>
> e. violation of California Labor Code § 226.7 by requiring Class Members to work during rest periods (or not paying Class Members during breaks taken) mandated by the applicable Wage Order and failing to provide said Class Members one (1) hour additional wages at the non-exempt employee's regular rate of compensation for each workday that the rest period is not provided;
>
> f. violation of California Labor Code §§ 512, 226.7 and IWC wage orders by failing to provide timely, uninterrupted, 30-minute meal periods or premiums; and
>
> g. violation of California Labor Code § 203 by failing to pay all wages earned and unpaid at the time of certain Class Members' discharge from employment by the Employer Defendant.
>
> h. violation of California Labor Code § 1197.1 by failing to pay to Plaintiffs and Class Members less than the minimum wage.

(Doc. 42 at 30-31, ¶ 126 (sic).)

As the Court explained in addressing the First Amended Complaint, a plaintiff must allege facts to support any alleged predicate violations of state and federal law. *See Berryman v. Merit Property Management, Inc.*, 152 Cal. App. 4th 1544, 1554 (2007). For example, if a plaintiff alleges facts sufficient to support claims for violations of the FLSA and California Labor Code, the federal and state

34

1   statues are proper predicate violations under the UCL.  *See Duarte v. Mzr Inc.*, 2010 WL 11586755, at

2   *7 (N.D. Cal. July 8, 2010) (where the plaintiff "allege[d] several violations of federal and state labor

3   statutes, including the Fair Labor Standards Act and California Labor Code …, [the statutory claims]

4   may serve as predicate violations under the 'unlawful' prong of the UCL").  Conversely, if a plaintiff

5   fails to state a claim under a "borrowed" law, it cannot support the UCL claim.  *Pellerin v. Honeywell*

6   *Int'l, Inc.*, 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012) (a claim under the UCL "must be dismissed if the

7   plaintiff has not stated a claim for the predicate acts upon which he bases the claim").

8          Plaintiffs failed to allege facts sufficient to support their claims for overtime wages, minimum

9   wages, meal periods, rest breaks, and failure to pay wages due upon termination.  Consequently, these

10  alleged violations cannot support their UCL claim.  *See Pellerin*, 877 F. Supp. 2d at 992; *see also*

11  *Dooms v. Fed Home Loan Mortg. Corp.*, 2011 WL 1232989 at *21 (E.D. Cal. Mar. 31, 2011)

12  ("[r]eliance on other invalid claims alleged in the complaint fails to support a viable UCL claim").  In

13  addition, Plaintiffs allege violations of Labor Code §§ 204, 214, 218, 221 and 1199, which they now

14  contend are predicate violations.  (*See* Doc. 42 at 9, ¶ 30; Doc. 45 at 20.)  However, Plaintiffs do not

15  allege any factual allegations to support these claims.  For example, Plaintiffs do not allege how

16  frequently they received paychecks from Blue Diamond Growers, such that the Court may determine

17  there was a violation of Cal. Lab. Code § 204, under which wages "earned by any person in any

18  employment are due and payable twice during each calendar month, on days designated in advance by

19  the employer as the regular paydays."[6]  Similarly, Plaintiffs fail to allege how, or in what manner, Blue

20  Diamond Growers collected any wages previously paid to its employees in violation of Cal. Lab. Code

21  § 221.  Plaintiffs also do not explain how Sections 214 and 218—which address where an action may

22  be prosecuted and the authority of the district or prosecuting attorney—relate to their claims or caused

23  an economic injury to Plaintiffs.  *See* Cal. Lab. Code §§ 214, 218.

24         Given the scarcity of factual allegations, and apparent inapplicability of several identified

25  provisions of law, Plaintiffs also fail to support their claim for a violation of Section 17200 under the

26  unlawful prong.  Because Plaintiffs fail to state a plausible claim under any of the three prongs of

28  [6] Notably, Section 204 requires only "payment of wages in a timely manner; it does not provide a right to wages." *Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1136 (N.D. Cal. 2011), *aff'd* 546 Fed. App'x 613 (9th Cir. Sept. 5, 2013).

1  Section 17200, Defendants' motion to dismiss the UCL claim is granted.

2  **I.      References to Cal. Labor Code §§ 204, 214, 216, 218, 221, 1197 and 1199**

3       Defendants request the Court dismiss or strike references to the Labor Code §§ 204, 214, 216,

4  218, 221, 1197 and 1199. (Doc. 43 at 2-3, 20.)  Defendants assert these sections do not have supporting

5  allegations, do not create an employer obligation, or concerned only criminal matters to be prosecuted

6  by the state of California.  (*Id.* at 20.)  On the other hand, Plaintiffs contend the identified provisions

7  should not be dismissed, because they relied upon each of sections as predicate violations of the UCL,

8  which may be based upon criminal laws.  (Doc. 45 at 22.)

9       Because the sufficiency of all causes of action in the Third Amended Complaint were

10  addressed extensively—including the UCL claim in which Sections 204, 214, 216, 218, 221, and 1199

11  were incorporated as predicate violations—the Court declines to further address the claims previously

12  dismissed above.

13  **V.      Leave to Amend**

14       Plaintiffs request that if the motions to dismiss or strike are granted, then leave to amend be

15  granted.  (Doc. 45 at 23, citing *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2nd Cir. 1988).)  Pursuant to

16  Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so

17  requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits,

18  rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)

19  (en banc) (alterations, internal quotation marks omitted).  When dismissing a complaint for failure to

20  state a claim, "a district court should grant leave to amend even if no request to amend the pleading

21  was made, unless it determines that the pleading could not possibly be cured by the allegation of other

22  facts." *Id*. at 1130 (internal quotation marks omitted).  Accordingly, leave to amend generally shall be

23  denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or

24  be futile, or if the moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publishing*,

25  512 F.3d 522, 532 (9th Cir. 2008).

26       The Court has insufficient information to conclude that amendment is futile due to the lack of

27  information in the TAC concerning Plaintiffs' employment with Blue Diamond Growers, including the

28  basic information such as Plaintiffs' hourly wages and overtime pay received, such that the Court may

determine whether Plaintiffs may proceed with their claims for minimum wage and overtime violations. Amendment would allow Plaintiffs the opportunity to plead additional facts to support their claims, including support their contention that Horn is a managing agent of Blue Diamond Growers.  Further, it does not appear amendment would cause undue delay at this juncture, and there is no evidence before the Court suggesting Plaintiffs acted in bad faith.

Plaintiffs will be granted **one, final opportunity** to allege facts sufficient to meet the standards identified under *Landers* to state a plausible wage and hour claims.  However, Plaintiffs are cautioned that if they again fail to allege facts sufficient to support their claims, the Court may find Plaintiffs are unable to do so.  *See, e,g.*, *Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 1008 (9th Cir. 2009) ("repeated failure to cure deficiencies" constitutes "a strong indication that the [plaintiff] has no additional facts to plead" and "that any attempt to amend would be futile").

## VI.    Conclusion and Order

For the reasons set forth above, the Court **ORDERS**:

1.    Defendants' motion to dismiss (Doc. 43) is **GRANTED**, with leave to amend.

2.    Plaintiffs **SHALL** file any Fourth Amended Complaint within 45 days of the date of service of this order.  Failure to comply with this order will result in the dismissal of the action for failure to prosecute.

IT IS SO ORDERED.

Dated:   **March 1, 2023**

UNITED STATES DISTRICT JUDGE